Nels Nelson, Respondent, v. James E. Withrow, Administrator et al., Appellant.

November 6, 1883.

1. Practice — Bill of Exceptions — New Trial. — An appellate court will review questions raised upon exceptions to a referee's report which is wholly in writing, though the motion for a new trial was overruled at the second term after judgment, and though a continuance of the motion from the first to the second term after judgment does not affirmatively appear.

2. —— The case of *Givens* v. *Van Studdiford* (13 Mo. App. 168), considered and approved.

3. Mechanic's Liens — Statement of Account. — An account filed as the foundation of a mechanic's lien, which contains a general charge, including an item for which no lien is given, will not support a lien.

4. —— Defects in such an account are not cured by oral evidence from which the jury may separate the items for which a lien is given from those for which a lien is not given.

5. —— A sub-contractor's account which refers for its items to the contract between the contractor and the sub-contractor is not a sufficient basis for a lien.

6. —— The amount of the lien charge must certainly and definitely appear from the account filed.

7. —— Application of Payments. — A payment by the owner to a sub-contractor without directions as to its application will be applied to those items for which the sub-contractor has a lien right.

Appeal from the St. Louis Circuit Court, Lindley, J.

*Reversed and judgment.*

Geo. P. Strong, for the appellant: The plaintiff, by his own act, has so mingled his lien claim with his claim for

which he has no lien, that they can not be separated, and thereby he has deprived himself of the benefit of the law. — *Blakey* v. *Blakey*, 27 Mo. 39 ; *Bader* v. *Bensberg*, 6 Mo. App. 445 ; *Kershaw* v. *Fitzpatrick*, 3 Mo. App. 575 ; *Egan* v. *Salisbury*, 17 Mo. 271. "It is the just and true account," which by the statute is to be a lien, and where none is filed, there is no lien, in its inception. — *McWilliams* v. *Allan*, 45 Mo. 574 ; *Lowis* v. *Cutter*, 6 Mo. App. 54. The lien claim must set out the items. — *King* v. *Railway*, 7 Mo. App. 410.

R. R. FLITCRAFT, for the respondent : The bill of exceptions was not filed in time (*Elliott* v. *Pogue*, 20 Mo. 263 ; *Ellis* v. *Anderson*, 25 Mo. 327 ; *West* v. *Fowler*, 55 Mo. 300 ; *The State* v. *Duckworth*, 68 Mo. 156 ; *Bosley* v. *Hart*, 7 Mo. App. 581 ; *Coste* v. *Stifel*, 8 Mo. App. 601), and hence will not be received on appeal. — *Givens* v. *Van Studdiford*, 13 Mo. App. 168. The owner can not by voluntary and improvident payments to the contractor defeat a sub-contractor's lien. — *Garnett* v. *Berry*, 3 Mo. App. 197. The creditor may, in the absence of a direction by the debtor, apply payments to any demand which he may have against the debtor.— *Brady* v. *Hill*, 1 Mo. 315 ; *Middleton* v. *Frame*, 21 Mo. 412 ; *Waterman* v. *Younger*, 49 Mo. 413 ; *Gantner* v. *Kemper*, 58 Mo. 567.

THOMPSON, J., delivered the opinion of the court.

1. The defendant contends at the outset that there is no bill of exceptions in the record which we can consider. It appears, from the record entries in the transcript, that the original judgment was rendered at the June term, 1882, and that motions for a new trial and in arrest of judgment were filed at the same term, and within four days. It also appears that, at that term, an order was made of record continuing all causes and all motions and demurrers undisposed of until the next term. This carried the motions for a new trial, and in arrest of judgment over to the October term. Then, at the October term, on motion of the plain-

tiff, it appearing to the court that a clerical error existed in the judgment as originally entered, the court, from the *data* furnished by the referee's report, entered a corrected judgment, *nunc pro tunc,* as of the June term. Then, no general or special order of continuance, nor any further order, appears in the case until the December term, when the court made an order overruling the motions for a new trial and in arrest of judgment, and at the same term the bill of exceptions was signed. It thus appears that the bill of exceptions was signed at the second term after the judgment, in conformity with the referee's report as originally entered ; that one continuance of the motions for new trial and in arrest of judgment appears of record, and that, in order to consider the bill of exceptions a part of the record a second continuance will have to be presumed. It has been ruled in several cases, by the supreme court and by this court, in general terms, that a bill of exceptions can not be signed after the lapse of the term at which the judgment was rendered, except by consent of the parties appearing of record. *Ruble* v. *Thomasson,* 20 Mo. 263 ; *Ellis* v. *Andrews,* 25 Mo. 327 ; *West* v. *Fowler,* 55 Mo. 300 ; *West* v. *Fowler,* 59 Mo. 40 ; *The State* v. *Duckworth,* 68 Mo. 156 ; *Bosley* v. *Hart,* 7 Mo. App. 581 ; *Coste* v. *Stifel,* 8 Mo. App. 601 ; and see *Givens* v. *Van Studdiford,* 13 Mo. App. 168. In all of these cases, except the last, it seems to have been understood that the case was in such a state that the bill of exceptions could have been filed before the lapse of the term. Thus, in the earliest case above cited, it is said by Scott, J: " No reason appearing in the record why the bill of exceptions filed in this case was not made up until the term subsequent to the trial of the cause, it must be stricken out, and the judgment affirmed." *Ruble* v. *Thomasson,* 20 Mo. 263. And in the next case it is said by the same learned judge : " This bill of exceptions is stricken out of the record, nothing beyond the control of the parties appearing to have prevented its being signed within the time agreed upon." *Ellis* v. *Andrews,* 25 Mo.

327, 329.   He quotes with approval the language of Tom-
kins, J., in an earlier case, occurring under a prior statute,
where a party had neglected to present his bill of excep-
tions until the term of office of the judge who presided at the
trial had expired.   The court held that a bill of exceptions
signed by the successor of such judge could not be con-
sidered ; nor was it deemed a hard case, because the statute
contemplated that exceptions should be taken and written
out, and bills of exceptions tendered during the progress
of the trial, and a party not having done this, must take
the consequences of his negligence.   But where the signing
of the bill of exceptions at the term at which the judgment
is rendered is not due to the laches of the exceptor, but is
prevented by the act of the judge in taking under advise-
ment a motion for a new trial, and continuing or holding
it from term to term, it is difficult to see upon what
principle this rule can apply, except with reference to such
exceptions as might have been taken during the progress of
the trial.   All of the exceptions insisted upon in this case
relate to supposed errors committed by the court in render-
ing the judgment itself.   It is true that they reach behind
the judgment and attack the report of the referee in respect of
his rulings, both as to the law and facts.   But in the state
of our rules of practice, none of these exceptions could have
been rendered availing, and not a line in the bill of excep-
tions could have been considered by this court unless a mo-
tion for a new trial had been filed and overruled, and an ex-
ception saved to the order of the court overruling the same.
*Bevin* v. *Powell*, 11 Mo. App. 216.   In view, then, of the
defendant's situation in this case, it may be asked whether a
party against whom an unjust judgment is rendered, is to
lose his right to have it corrected by an appeal or writ of
error, through the negligence or misprision of the judge in
continuing his motion for a new trial, or in pocketing it and
holding it over until a succeeding term without any order
continuing it?   If this is the law, the absolute right of

appeal which the law gives to a party becomes a right subject to the discretion or caprice of the judge by whom the judgment is rendered; and the writ of error, instead of being a writ of right, as it is declared to be by our statute, becomes a mere shadow and a delusion. It may be said that the party against whom the judgment is rendered is entitled to a *mandamus* to compel the trial judge to act on his motion for a new trial before the lapse of the term. It is a mere mockery to suggest such a remedy; for how can he know until the term has elapsed that the judge will not so act? And what appellate court will grant such a *mandamus*, while the term of the trial court at which the judgment has been rendered is still pending? If this is a good rule, a party litigant may be destroyed, not by his own fault, but by the negligence of a single judge. It is a principle that the law does not compel a party to do a vain and useless thing. I apprehend that it may be said with equal propriety, in the construction of a statute establishing a rule of procedure in courts of justice, that it does not contemplate impossibilities, but that parties are not to lose their rights, for not complying with it where compliance is not possible.

On the other hand, it is not to be overlooked that the practice of holding over motions for new trial from term to term often works hardship and injury to the successful party to the suit. Presumptively he is entitled to keep his judgment, and to have the fruits of it without unreasonable delay. If the rulings which led to it are to be revised in an appellate court, he is entitled to have them revised as they were made, and not upon an imperfect or erroneous bill of exceptions. This right may often be defeated or prejudiced by the act of the judge in holding over the motion for a new trial from term to term, until the incidents of the trial and the rulings which he made during it have passed out of his mind.

In *Givens* v. *Van Studdiford* (*supra*), we felt all the dif-

ficulties of this question, and that case was not decided
without the most earnest consideration. We felt in that
case that a line must be drawn somewhere, and we held
that we would not presume, for the purpose of giving effect
to a bill of exceptions signed at the term at which the motion
for a new trial was overruled, which was the third term
after the judgment had been rendered, no orders appearing
of record continuing the motion, that such orders of con-
tinuance had actually been made. We shall adhere to that
decision until the question is otherwise decided by the
supreme court. Under that decision, the unsuccessful
party may avoid any sacrifice of his rights by taking, before
the close of the trial term, or at the next term, if the motion
for new trial is denied, a bill of exceptions as to all rulings
which were made during the progress of the trial. We see
nothing for him to do but to wait until the judge passes
upon his motion for new trial. If his motion is sustained,
his labor in making up his bill of exceptions, it is true, goes
for nothing, and he must thank the delay of the judge for
the useless expense to which he has been put. If it is
overruled, and he wishes to appeal and save the benefit of
his former trial, he must take a second bill of exceptions as
to this ruling, and then appeal. We see no other way out
of the difficulty.

In this case we are asked to go further than we went in
*Givens* v. *Van Studdiford*, and to shorten the period of
limitation to two terms, as to one of which there was a
continuance of the motion for a new trial. We are of
opinion that, under the circumstances of this case, we can
not do this. The appellant had saved all the exceptions
which he now insists upon, in the form of exceptions to the
referee's report. That report was based entirely upon
evidence which had been taken in writing by the referee,
and which was returned into court with his report. The
referee's conclusions thereon were also in writing, drawn
up in the form of a report to the court with minute detail.

Exceptions to this report were also presented in writing, and filed by the clerk among the papers in the cause.

Nothing which had formed the subject of an exception at the trial rested in the memory of the judge; everything was in writing. The appellant had filed his motions for new trial and in arrest of judgment within the time limited by the statute. To have gone further and to have drawn up and procured the judge to sign a formal bill of exceptions at the trial term, or even at the next term, would have been wholly unnecessary, and, in the event of the judge sustaining his motion for new trial, or his motion in arrest of judgment, it would have proved an useless expenditure of clerical labor. We, therefore, hold that, for the purposes of justice, we must presume a second continuance of the motion for a new trial, and that the appellant is entitled to have his bill of exceptions considered.

2. Upon the merits, we are indebted to the referee, before whom this case was tried, and to the counsel on both sides, for such a thorough presentation of it that, though the record is very long, our labors in investigating it have been very much abridged. It is an action to enforce a mechanic's lien. It was referred to a referee to try all the issues, both of fact and of law, and, in conformity with his report, the plaintiff had a judgment. Among the numerous objections made to the conclusions of the referee, our attention has been arrested by one which seems to present an insuperable difficulty in the way of sustaining this judgment. The principal item of the account filed by the plaintiff as the basis of his claim for a mechanic's lien was a lumping charge of $1,900, for "carpenter work furnished * * * as per contract." The contract, when put in evidence, disclosed the fact that this item was not alone for carpenter work, for which the law gives a lien, but that it was also for superintending, for which the law gives no lien. *Raeder* v. *Bensberg*, 6 Mo. App. 445; *Blakey* v. *Blakey*, 27 Mo. 39. The contract did not set out how much was to be paid for

doing the carpenter work, and how much for superintending ;, but it merely recited that the plaintiff " agrees to do all the carpenter work and superintending on the row of houses described, for the sum of $1,900." This seems to bring the case directly within the rule of· the supreme court in *Edgar* v. *Salisbury* (17 Mo. 271), and of this court in *Kershaw* v. *Fitzpatrick* (3 Mo. App. 575). The principle of these decisions is that where an account filed as the basis·of a claim for a mechanic's lien contains a lumping charge, in which is mingled an item for which the law gives no lien, the statute has not been complied with, and no lien is acquired in respect of such item. The reason of this ruling is that the owner of the building has the right to know, from the account filed, the amount which, under the law, has become a charge upon the property, in order that, by paying or tendering this amount, he may discharge the property of the incumbrance. The learned referee, while conceding this rule of law, reasons that the present case does not fall within it, because the account, as filed, did not embrace the item of superintending according to the terms of the contract to which it referred. We do not concur in this view. The contract referred to in the account filed is either to be treated as a part of the account, or it is not. If it is to be treated as a part of the account, then the case falls precisely within the decisions referred to, where the lumping charge appeared on the face of the account itself. If it is not to be read as a part of the account, then the account is bad under the decision of this court in *Lowis* v. *Cutter* (6 Mo. App. 54), where it was held that such an account, filed by a sub-contractor, which refers for items to the contract between him and the principal contractor, is not a sufficient compliance with the statute. The referee, however, has not overlooked this point, and he reasons, on the authority of *Hilliker* v. *Francisco* (65 Mo. 603), that the account is not bad for this reason, since, as he finds from the evidence, the defendant·Partridge, who was the owner of the build-

ings, was cognizant of the terms of the contract before tne filing of the lien claim. This, if true, drives us back to the other proposition, and compels us to read the account as though the contract had been set out in it in *hæc verba*.

There is the further consideration that the statute (2 Wag. Stat. 909, sect. 5) required the contractor, in order to establish his lien, to file with the clerk of the circuit court " a just and true account of the demand due him." Now, the account which was filed in this case becomes a just and true account only when the contract to which it refers is read with it. If that is left out of view, then it appears that an account has been filed essentially different from the terms of the contract, which omits a demand which deprives the sub-contractor of his right of lien in respect of the whole item, and which is, hence, a fraud upon the statute. The referee further reasons that the case is not within the principle of the decisions referred to, because it is possible, upon the evidence as to the character of the services which were actually rendered, to apportion the amount which was fairly due for the carpenter work, and also the amount which was fairly due for the superintending; and he has made such an apportionment in this way : He finds from the evidence that, although the plaintiff agreed with the principal contractor to do the entire carpenter work and superintending for $1,900, it was fairly worth $2,770 ; that the carpenter work was fairly worth $2,000, and the superintending $770. Upon the basis of this evidence of *quantum meruit* and the sum stipulated for in the contract, he strikes a proportion for the purpose of ascertaining what the plaintiff ought to recover for the carpenter work, thus : He finds that the amount which ought to be recovered for the carpenter work is $\frac{2000}{2770}$ of $1,900, or $1,371.85. And, by the same process $(1,900 \times \frac{770}{2770} = 527.05)$, he finds that the amount which ought to be rejected from the lien claim for the superintending is $527.05. It is plain that

the mingled and lumped items in the two cases of *Edgar* v. *Salisbury* and *Kershaw* v. *Fitzpatrick* (*supra*), were just as capable of apportionment as the item under consideration in this case, by the same process of examining witnesses as to the reasonable value of the work for which the law gave a lien and the reasonable value of the work for which the law gave no lien; but it is not intimated in the opinion in either of those cases that the defect is curable in this way, and the reasoning of the supreme court in *Edgar* v. *Salisbury* indicates the contrary. It is not sufficient that the amount of the lien can be ascertained by extrinsic evidence, but the owner of the property is entitled to be informed of that fact from the account itself. Accordingly, in that case, it was said by Gamble, J.: " When he [the contractor] charges a single sum for different services, and any of them are of a character for which the law would give no lien, he can not proceed under the statute, because he has filed no proper account, and because it is impossible to ascertain the amount of his lien from the account filed."

This disposes of this item of the account, unless there is force in the contention of the plaintiff's counsel that the plaintiff, being a boss carpenter, and not an architect, is entitled to a lien for superintending. We do not take this view. It was held in *Blakey* v. *Blakey* (27 Mo. 39), that where a builder contracts to build a house, he can have no lien for services rendered in superintending his own workmen. If the principal contractor can not have a lien for such services, we know of no principal on which a subcontractor can have it.

3. This disposes of the case so far as the claim for a lien in respect of the item for $1,900 is concerned. It remains to consider whether the plaintiff is entitled to a lien in respect of a number of small items for extra work, amounting in the aggregate to $258.25. If, as was said by Gamble, J., in *Edgar* v. *Salisbury* (17 Mo. 271, 273), " There is no doubt that if there was an account charging different

items, some of which might by law be an incumbrance on the property, and others which did not come within the scope of the statute, the party might pursue his remedy to enforce the lien as far as one was given by law.'' Of these items, the referee has found that the second, third, fourth, fifth, sixth, seventh, eighth, twelfth, and fourteenth, are correct, amounting in the aggregate to $160.75. But it appears from the plaintiff's account, that the defendant Partridge, the owner of the buildings on which the lien is claimed, had paid him over $700, and as it does not appear from the referee's report that Partridge directed these payments to any specific item, the law will apply them to those parts of the demand in respect of which Partridge stood liable to the plaintiff, that is, to those items of the account in respect of which the plaintiff might have acquired a lien upon the property of Partridge. When so applied, they much more than extinguish such item, and leave no items of account subsisting which could form the basis of the mechanic's lien which the plaintiff claims.

It thus appears that, upon the facts found by the referee, judgment ought to have been entered for the defendant; and accordingly the court here, proceeding to give the judgment which the circuit court should have given, must reverse the judgment of the circuit court, and enter judgment for the defendant. It is so ordered. All the judges concur.

Separate opinion by BAKEWELL, J.

I think that, in this case, one continuance being shown, a second continuance might be presumed for the purpose of enabling us to look at the bill of exceptions. Some things are said by my brother THOMPSON, in treating of the question of the time within which bills of exception must be signed, which are to be taken rather as expressing his views than my own, and by which I do not consider myself as bound by concurring in this opinion.