J. C. SWEEM, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 11, 1900.

1. **Railroad Liens: LIENABLE WORK: LOADING BALLAST.** A contractor who loads ballast belonging to a railroad company on its cars from pits located at the end of a spur whence it is transported and unloaded by the company upon its roadbed in improving and repairing the same, is entitled to a lien under the statute.

2. ———: ———: SUPERINTENDENCE. A foreman who directs the work of laborers in improving a railroad does work in such improvement and under the railroad lien statute is entitled to a lien for his wages.

3. ———: ALLEGATA ET PROBATA: ORIGINAL CONTRACTOR'S PRICE: DEFENSE. The charge of a subcontractor suing for a lien must not be greater than that of the original contractor but the railroad company to secure the protection of the statute must interpose such matter as a defense and the sub-contractor need not allege or prove that his charge is not greater than his principal.

4. ———: RELIANCE ON LIEN: PRESUMPTION. A subcontractor is presumed to rely upon his lien and does not have to prove it.

5. ———: LIENABLE AND NONLIENABLE ITEMS: LUMPING CHARGE. The lien account was "to work superintending loading ballast." It was shown that the lienor also paid some men on one or more occasions which, however, was a trivial affair not embraced in the account. Held, it could not have the effect to destroy the lien.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Gardiner Lathrop, John B. Hale, T. J. Whiteman* and *S. W. Moore* for appellant.

(1) The statute gives no lien for work and labor performed under such a contract as that between defendant railway company and Pugh. The contract was not for the construction or the improvement of the defendant's railway, nor was Pugh a contractor "having in charge the building, construction or improvement of such railroad or any part thereof;" Pugh's employees, therefore, are not entitled to liens. R. S. 1889, sec. 6741; Mackler v. Railway, 52 Mo. App. 516, loc. cit. 519. (2) The work and labor performed by the lienors were not of the character for which the statute gives a lien. Wilson v. Whitcomb, 100 Pa. St. 547; Webster v. Improvement Co., 140 Mass. 526; Boisot on Mechanics' Liens, sec. 112; McCormick v. Los Angeles, 40 Cal. 185; Ryan v. Guilfoil, 43 Pac. Rep. (Wash.), 351. (3) The

statute gives no lien to the one who performs the services which the lienor J. W. Smith rendered Pugh in this case— superintending the work, keeping the books, keeping the time of the men, and paying them off. The mingling of nonlienable items with other items necessarily defeats the entire lien. Edgar v. Salisbury, 17 Mo. 271; Nelson v. Withrow, 14 Mo. App. 270, loc. cit. 276; Murphy v. Murphy, 22 Mo. App. 18; Kershaw v. Fitzpatrick, 3 Mo. App. 575; Gauss v. Hussmann, 22 Mo. App. 115; Boiler Works v. Haydock, 59 Mo. App. 653; O'Connor v. Railway, 111 Mo. loc. cit. 194, and cases there cited. (4) The lienors being all subcontractors under Pugh, for work and labor, the plaintiff was bound to allege and prove that their work and labor were not charged for at a greater rate than was agreed upon between the railway company and the original contractor Pugh. R. S. 1889, sec. 6757. (5) The plaintiff wholly failed to show that the lienors extended credit to Pugh for their work and labor, on the strength of their lien rights, and also wholly failed to show that any of the ballast loaded during the months covered by their accounts was used upon the defendant's roadbed. There was, therefore, a failure of proof. Rand v. Grubbs, 26 Mo. App. 591; Heltzell v. Railway, 20 Mo. App. 435; Simmons v. Carrier, 60 Mo. 581; Fitzpatrick v. Thomas, 61 Mo. 512; Schulenberg v. Institute, 65 Mo. 295; Lumber Co. v. Cravens, 54 Mo. App. 216; Deardorff v. Everhartt, 74 Mo. 37.

*Virgil Conklin* for respondent.

(1) The railroad lien statute was designed and intended to protect all persons who performed work or labor in connection with the construction or improvement of a railroad. Hence the service of loading ballast, provided for by the Pugh contract, was lienable. Laws of 1873, p. 58; R. S. 1889, sec. 6741; Andrews v. Railroad, 16 Mo. App. 299;

Chemical Co. v. Railroad, 59 Mo. App. 7; Hill v. Newman, 38 Pa. St. 152; Kehoe v. Hansen, 65 N. W. Rep. 1075; Dixon v. La Farge, 1 E. D. Smith, 722; Eccleston v. Hetting, 17 Mont. 88; s. c., 42 Pac. Rep. 105. (2) All of the labor performed by the lienors was necessary to the work of loading the ballast. Also, it was all provided for or contemplated in the Pugh contract. Hence it was lienable. Andrews v. Railroad, 16 Mo. App. 299; Chemical Co. v. Railroad, 59 Mo. App. 7; Powder Co. v. Byrns, 21 How. Pr. 189; Winslow v. Urquhart, 30 Wis. 268; Vandegrift and Foreman's App., 83 Pa. St. 127; Willamette Co. v. Renick, 1 Oregon, 169; Powder Co. v. Railroad, 42 Fed. Rep. 470; Wood v. Donaldson, 17 Wend. 550; McDermott v. Palmer, 4 Seld. 383; Mining Co. v. Gallagher, 5 Colo. 23. (3) The railroad lien statute gives a lien for superintending, or performing any other work or labor, in constructing or improving a railroad. In this respect the railroad lien statute is different from the law giving liens to mechanics. The cases which deny or restrict the lien of a superintendent are all under the mechanics' lien statute, and the principles which govern them do not apply to the railroad lien law. Edgar v. Salisbury, 17 Mo. 271; Blakey v. Blakey, 27 Mo. 39; Raeder v. Bensberg, 6 Mo. App. 445; Nelson v. Withrow, 14 Mo. App. 270; Murphy v. Murphy, 22 Mo. App. 18. (4) The statute, providing that subcontractors shall not recover from the owner at a greater rate than provided in the original contract, is a statute of limitations and must be affirmatively pleaded by the defendant. R. S. 1889, sec. 6757; Bell v. Clark, 30 Mo. App. 224. And such defense must be distinctly brought to the attention of the trial court in some way. Carder v. Primm, 47 Mo. App. 301.

ELLISON, J.—This action is to enforce several mechanics' liens against the defendant railway. There were

other claims besides that of plaintiff and these were duly assigned to him. The judgment in the trial court was for plaintiff. The judgment was entered as a personal judgment against defendant and interest was also allowed on each claim.

The claims, with one exception, are for work and labor alleged to have been performed in constructing and improving defendant's railroad and roadbed. The claim just excepted was for superintending the work. It appears that M. E. Pugh was the contractor having in charge the work in question and that he was engaged by defendant by written contract. Defendant owned a lot of burnt clay in a pit near its track which it desired transferred from the pit to the roadbed and there used in reconstructing or improving the same. For this purpose it built a switch running from the pit to the road proper and engaged plaintiff to load the cars from the pit, he having a machine for loading such material onto the cars, on which the clay was moved up to the place wanted on the roadbed. It was this work which forms the subject-matter of this controversy. The defendant contends that it was not such work as the statute on this subject contemplated should be lienable. We have no hesitation in ruling the point against defendant. The statute (sec. 6741, R. S. 1889), gives a lien to such persons as do the work in constructing or improving the roadbed, provided the contract is made with the railway company, its agents or contractors. This statute evidently embraces repairs. That part of the contract with Pugh, necessary to notice, was as follows:

"Whereas, the party of the first part has about seventy-five thousand (75,000) cubic yards, more or less, of burnt clay ballast in pit where the same was burned at Norborne, on its line of railroad; and, whereas, it desires such quantity of such ballast as it may need for use for its roads, such amount or quantity to be determined by its division superin-

tendent, to be loaded upon its cars; and whereas, the party of the second part has the necessary machinery and appliances to expeditiously load said ballast upon the cars of the first party; it is, therefore, mutually agreed and understood between the parties hereto as follows: The party of the second part shall * * * pay all expenses incident to the operation and movement of said machinery and appliances, and the wages of men employed in and about the same and in the loading of said cars with said ballast so required. The party of the second part * * * shall, with all expediency, excavate from said pit, and load upon the cars of the first party, placed upon said sidetrack, so much of the entire amount of said ballast in said pit or pits as may be needed by the first party upon its road in the vicinity of said station of Norborne or convenient thereto. And said party of the second part shall and will indemnify and save harmless the party of the first part against all liability * * * and against all liens of every kind which may be made or claimed by employees of the second party engaged upon said work."

This discloses the nature and location of the work. There is no sound reason in the statement that because the work in question consisted in loading the cars at the loading end of the switch which was not immediately adjoining or contiguous to the roadbed that therefore it was not work done in improving the road. It was as much so as was the work in unloading and leveling upon the roadbed itself. If these parties had loaded the clay at the pit into wheelbarrows and wheeled it to and dumped it upon the roadbed, what would be said of the suggestion that it was not lienable work? But it will be noticed by the latter portion of the contract that the defendant itself contemplated that the work was lienable by inserting a protective clause against liens. We regard the decisions of the St. Louis Court of Appeals as applicable, in

principle, to the question. Andrews v. Railway, 16 Mo. App. 299; Rapanno Chem. Co. v. Railway, 59 Mo. App. 6. There are cases in other states in which it is held that a lien can not be maintained by one employed to haul material to a building; other cases hold the contrary view: For both views see: Webster v. Improvement Co., 140 Mass. 562; Wilson v. Whitcomb, 100 Pa. St. 547; Eccleston v. Hetting, 17 Mont. 88; Ryan v. Gilfoil, 13 Wash. 373; Kehoe v. Hausen, 8 South Dakota, 198.

It is not necessary to decide which rule would be followed in this state under the wording of our statute. For in this case, the loading of the clay was immediately connected with the transporting and unloading onto the road. The three acts of loading, transporting and unloading were so connected and continuous as to constitute, in reality, the one act of doing the work of improving or repairing the railroad.

One of the claims assigned to plaintiff was that of Smith, who superintended the work and labor. Smith was a machinist and he was the foreman or superintendent of the work. He did not do any of the actual manual labor. In this state (Edgar v. Salisbury, 17 Mo. 271) it is held that the mechanics' lien law does not give a lien to one who disburses the money in payment for the building. And that case specially refrains from deciding whether an architect who superintends the building would have a lien. In Blakey v. Blakey, 27 Mo. 39, a mechanics' lien was denied to a contractor for superintending his own workmen. In Raeder v. Bensberg, 6 Mo. App. 445, the St. Louis Court of Appeals held that one not acting as an immediate superintendent with immediate supervision of the workmen but "purely as an architect," was not entitled to a lien under the general mechanics' lien law. But it was said in that case that a mechanic who acts as overseer would not lose his lien for mechanical

services simply for the reason that he was also overseer. In Nelson v. Withrow, 14 Mo. App. 270, that court decided that a subcontractor could not have a lien for superintending his workmen.    In Murphy v. Murphy, 22 Mo. App. 18, that court stated that a superintendent of a building could not maintain a mechanics' lien.    But the statement was not necessary to a decision of the cause.    For that was for a commission of ten per cent added to the bill, as an afterthought, upon objection being made to the bill as first rendered.

From this resume of the authorities in this state we think the question whether a mechanic hired for the purpose of superintending a building is entitled to a lien for his services has not yet been decided. And so we are left free, even considering the builders' lien statute and the railroad lien statute as alike, to consider as an original proposition, whether this claimant, who was a mechanic or machinist superintending the work of loading the cars with plaintiff's machine, is entitled to a lien for his services.    But we need not consider the two statutes as wholly alike.    The builders' statute reads:    "Every mechanic or other person who shall do or perform any work or labor upon any building," etc. The railroad statute reads:    "All persons who shall do any work or labor in constructing or improving the roadbed," etc.    Now, neither of these statutes would embrace a mere professional man such, for instance, as an extreme illustration, a lawyer who should draw up contracts for the work. But the latter may include some persons which the former would exclude, for it is a broader statute. The former refers to mechanics or other persons; that is, other persons of like kind, *ejusdem generis*: authorities *supra*. The latter includes all persons who do any work or labor (not upon the building) but in constructing or improving the roadbed.    Certainly an overseer, foreman or superintendent who directs the work of the laborers and gives personal supervision thereof, does

work in the construction or improvement. We, therefore, hold this part of plaintiff's claim to be lienable.

It is next suggested that plaintiff should have alleged and proved that the work and labor was not charged for at a greater rate than agreed upon by the original contractor. It is provided by section 6757, Revised Statutes 1889, that the charge of the subcontractor must not be greater than the original contractor, but if the railway company (a party to such contract and, of course, acquainted with the charges provided for) wishes the protection of this statute it should, when the facts justify it, interpose it as a defense.

It is next urged that plaintiff did not prove that the claimants relied on their right to a lien. The evidence tended to prove what this material was used for and that these claimants knew it was being used on defendant's road. "A subcontractor, laborer, or materialman, in dealing with the contractor, is presumed to rely upon his lien upon the property. It is not necessary for him to prove affirmatively that he relied upon the credit of the building, if his labor or materials actually entered into its construction. The burden is upon the landowner to show that he relied upon the credit of the contractor alone. The law gives the subcontractor the right of a lien if he complies with its requirements, and it is always to be presumed that he accepts the benefits the law confers. The fact that he brings himself within the requirements of the statute, and afterwards seeks to enforce his right, is sufficient proof that he intended to rely upon this right." 2 Jones on Liens, sec. 1284.

If lienable and nonlienable accounts are so blended as that they can not be separated it will cause the whole claim to be rejected. Edgar v. Salisbury, 17 Mo. 271. Defendant claims that this rule ought to exclude the account of Smith who, it is claimed, has made a lump charge for keeping books, paying the men, etc. The account is, "to work

superintending loading ballast." It is true, Smith's testimony shows he paid some men at one or more times at request of the contractor, but it was a mere trivial matter not embraced in the account and should not have the effect of destroying the lien for that which goes to make up the entire account.

We consider that the form of the accounts are sufficient and that they state their general nature sufficiently.

Interest was allowed on the different counts. This is conceded to have been erroneous under the pleading and plaintiff remits the amount thereof. So a personal judgment was inadvertently entered with an enforcement of the lien. This is conceded to be erroneous and we will therefore affirm the judgment as to the lien only, less the interest aforesaid. *Smith, P. J.,* concurs; *Gill, J.,* absent.