CLARA B. HOLDEN, Appellant, v. MYRTLE H. LYONS, Respondent.

### St. Louis Court of Appeals, June 3, 1913.

1. **REAL ESTATE BROKERS: Right to Commission.** Where a broker employed to procure a purchaser for real estate finds a customer who is ready, willing and able to buy on the terms agreed upon, and introduces him to the owner, and the latter refuses to sell, the broker is entitled to his commission, notwithstanding that, a few hours later, the owner offers to sell to the broker's customer and he then refuses to buy.

2. **CONTRACTS: Breach: Right of Recovery.** Where one party to a contract interferes with or prevents its performance by the other party to an extent amounting to a refusal of performance, the latter may recover as if he had fully performed.

3. ——: ——: ——. The refusal of a party to a contract to perform the obligation thereby cast upon him releases the other party from further performance or a tender of performance, and fixes his right of recovery at the time of the refusal.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

REVERSED AND REMANDED (*with directions*).

*John J. O'Connor* for appellant.

(1) Where an agent or broker is employed to sell lands by the owner thereof, finds a purchaser for the property and does everything which he agreed to

do, and the trade fails, not on account of any default on his part or on the part of the purchaser, but because it is repudiated by the land owner, the agent, or broker, is entitled to his commissions. Harwood v. Dimer, 41 Mo. App. 49; Bailey v. Chapman, 40 Mo. App. 536; Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Stinder v. Blesch, 42 Mo. App. 578; Larow v. Bozanth, 68 Mo. App. 406; Hale v. Taylor, 140 Mo. App. 692. (2) When defendant refused to make the deal or sell the land to McFadden on the morning of July 12th, this was a flat repudiation of the contract of sale which she entered into with him on the 6th day of July, and McFadden had a right to take her and did take her at her word; and he was not required to wait any length of time to enable her to change her mind. Harwood v. Dimer, 41 Mo. App. 49.

*Stevens & Stevens* for respondent.

NORTONI, J.—This is a suit for commissions accrued on account of the sale of real estate by an agent. A jury being waived, the case was tried before the court. No instructions or declarations of law appear to have been given or refused and the finding and judgment were for defendant. Plaintiff prosecutes the appeal.

Both plaintiff and defendant are ladies and it appears they were formerly neighbors in St. Louis county. Defendant had removed to Texas. She owned a lot of ground in St. Louis county adjacent to plaintiff's home and desired to sell it. Defendant wrote plaintiff that if she would find a purchaser and negotiate a sale of the property in question for her at the price of $4225, under an arrangement whereby the purchaser would assume the payment of the current taxes for the year, she would pay plaintiff as commission therefor an amount equivalent to the difference be-

tween $4225 and the price at which she might sell the property. Plaintiff undertook to make the sale, and, acting upon this letter of employment, induced one McFadden to purchase the property. She took McFadden to the property and induced him to agree to purchase it at $4400, and to pay the taxes. This was on July second. On July third, defendant came to her former home in St. Louis county, on account of the illness of her mother, and plaintiff informed her that McFadden had agreed to take the place at $4400, and pay the taxes. McFadden paid plaintiff twenty-five dollars earnest money on the purchase the day before, on July second. Defendant thereupon being informed that McFadden was willing to take the property, agreed to the terms proposed and together with plaintiff met McFadden to close the deal on July fifth. On that day plaintiff, defendant and the purchaser, McFadden, all met in the office of a lawyer in St. Louis and defendant exhibited her deed to the property. This deed revealed a defect, however, in its execution and defendant caused the same to be corrected during the day, whereupon her deed was placed of record the second time. The title having thus been corrected, plaintiff, defendant and McFadden met a second time on the following day, July sixth, at the office of the attorney, where the matter was almost but not quite consummated by defendant executing a deed to Mr. McFadden, the purchaser, in consideration of $4400. This deed was not delivered on that day for the reason defendant's husband was not present to sign it. He resided in Texas and defendant mailed the deed to him for his signature and acknowledgment. The deed was to be delivered immediately upon its return within a few days. On the morning of July twelfth defendant called upon McFadden and plaintiff and informed each that she could not consummate the deal for the reason her husband declined to sign the deed. During this conversation defendant stated that if plaintiff would forego

seventy dollars of her commission or permit the payment of that amount out of the commissions to one Pindall, a cousin of defendant, then she would conclude the sale by conveying the title to McFadden.  The evidence is that defendant said, ''If Mrs. Holden will pay Pindall seventy dollars of her commission, the deal will be closed.''   And Mrs. Holden said, ''Not a cent,'' and Mrs. Lyons said, ''Then the deal can't go through.'' Thereupon defendant repudiated the entire transaction and refused to close the matter.

It appears that McFadden, the purchaser, had the money on hand at the time, for he was ready, able and willing to close by taking the title from defendant and paying the price therefor.  Indeed, he says he was anxious to close the bargain and insisted upon it and no one denies this to be true.   After defendant so abruptly broke off negotiations and refused to further proceed therewith, she ''got right up and went right out and did not return.''   This occurred in the morning of July twelfth and it appears defendant consulted with a lawyer some time thereafter during the day. That evening about seven o'clock defendant sent a note to McFadden, the purchaser, to the effect that she had reconsidered the matter and was ready to convey the property to him, but McFadden paid no heed to this. A few days thereafter he purchased other property and refused to further consider that of defendant. There is no conflict in the evidence.  Plaintiff, defendant and Mr. McFadden, all tell the same story.

It appears without contradiction that McFadden, the purchaser, was ready, able and not only willing but anxious to close the deal for defendant's property that morning, and, indeed, met plaintiff and defendant in conference for that purpose.  At one place in his testimony, he says after that conversation was over he made up his mind he would not accept defendant's property.  At another place in his testimony he indicates that he made up his mind not to purchase it

after receiving defendant's communication at seven o'clock in the evening that she had reconsidered and was willing to proceed with the sale. The questions and answers touching this matter are as follows: "Q. When you got that letter what did you do? A. I did a great deal of thinking about that time. Q. Did you do anything at all? A. I made up my mind that I wouldn't buy that property."

In cases of this character, where it appears the real estate agent has found a purchaser who is ready, able and willing to buy the property and actually introduces such proposed purchaser to the owner of the property, with a view to closing the deal, and the owner refuses to proceed and consummate it in accordance with the terms agreed upon, the law regards the sale as made on the part of the agent. In such circumstances, the agent has fully performed the full undertaking of his contract and is entitled to recover his commissions identically as though the deed were actually delivered. [See Hayden v. Grillo, 35 Mo. App. 647; Goodson v. Embleton, 106 Mo. App. 77, 80 S. W. 22; Sallee v. McMurry, 113 Mo. App. 253, 88 S. W. 157.]

The proposition thus stated is conceded to be true, but it is said the court properly found the issue for defendant because it appears the purchaser, McFadden, refused to proceed and conclude the purchase after defendant notified him at seven o'clock in the evening on July twelfth that she had reconsidered her refusal and was willing to close the bargain. It is obvious the court gave judgment for defendant on this theory—that is, on the theory that McFadden, the purchaser, repudiated the contract, and not the defendant.

There is evidence tending to prove that McFadden concluded immediately after defendant declared negotiations "off" on the morning of July twelfth that he would not further deal with her thereabout and there is evidence, too, as above quoted, that he thought it over after receiving her note at seven o'clock in the evening

and then made up his mind that he would not buy the property. It is clear enough from the record that the court found the latter to be true and gave judgment for defendant as though she was ready and willing to conclude the bargain and that McFadden "backed out." Had defendant been every ready and willing to proceed with the matter, the conclusion of law would be sound, of course, but not so where it appears she absolutely repudiated the contract and refused to proceed in the morning of that day, for it was then plaintiff's rights in the premises attached. The suit is on the contract for commissions, and the right of recovery accrues in the instant case on the theory that plaintiff had fully performed the entire undertaking on her part and defendant breached her obligation in the premises. The parties met on the morning of July twelfth to conclude the transaction and plaintiff produced the purchaser, McFadden, who was ready, able, willing and, as all the evidence shows, anxious to buy. But for the flat refusal of defendant to proceed and her absolute repudiation of the contract on her part, the sale would have been actually consummated there. It is an established rule of law that where one party to the contract interferes with or prevents its performancce by the other to an extent which amounts to a refusal of performance, the party thus interfered with may recover as if he had fully performed on his part. Indeed, this doctrine is universal. Here defendant's flat refusal prevented plaintiff from actually completing the sale. [See Halpin v. Manny, 57 Mo. App. 59; 7 Am. & Eng. Ency. of Law (2 Ed.), 151, 152.] Moreover the refusal of one party to a contract to perform the obligation thereby cast upon him releases the other party from further performance or even a tender of performance thereafter and fixes his right of recovery immediately then and there at the time of such refusal. So it is here. When plaintiff produced the purchaser ready, able and willing to buy in a meeting of

Stix v. Indemnity Co.

the parties to conclude the transaction and defendant saw fit to flatly refuse to further proceed as by repudiating the entire transaction and calling it off as she did, the right of recovery in plaintiff instantly accrued and no further tender or offer to perform on her part was necessary. [See Harwood v. Diemer, 41 Mo. App. 48; Deichmann v. Deichmann, 49 Mo. 107, 109; 7 Am. & Eng. Ency. of Law (2 Ed.), 150.] Upon such a flat refusal and repudiation of the contract appearing, the law concludes the matter in favor of the party who has thus fully performed his part and ever been willing to do and takes no account of a change in the mental attitude of the repudiator thereafter.

It is entirely clear the court erred in its conclusion of law on the admitted facts in the case, and the judgment should therefore be reversed and the cause remanded with directions to the trial court to give judgment for the plaintiff for the amount sued for, $175, and interest. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.