# W. H. FLORETH, Respondent, v. B. E. McREYNOLDS, Appellant.

Springfield Court of Appeals, August 10, 1920.

1. **PROCESS: Objections to Service Waived by Answer to Merits.** Objection to the validity of constructive service on defendant by leaving a copy of the summons with his sister was waived, where defendant later filed an answer to the merits and went to trial.

2. **MECHANICS' LIENS: Unperformed Work Under Contract Does Not Extend Time for Filing Lien.** The fact that a part of the work required under the subcontract had not been performed, and that performance was excused by the default of the original contractor as to other parts of the work without which the subcontract could not be completed, does not extend the time for perfecting the lien for work done under the contract, though if those unperformed portions of the contract had later been performed, time for perfecting the lien for the entire work under the contract would have dated from such performance.

3. ——: **Evidence Held to Show Charging Battery was Not Work Under Contract.** In a suit to foreclose a mechanic's lien for the installation of a water and lighting system, evidence that on two occasions a year and a half after completion of the other work, plaintiff, at defendant's request, charged the storage battery, which was necessary to prevent deterioration, and for which he made an additional charge, *held* to show that the work was not done under the contract, and did not extend the time for perfecting the lien.

4. ——: **Connecting Drain Pipe Held too Trivial to Extend Time for Lien.** Connecting a drain pipe for the plumbing system, though part of the work under the contract, is too trivial to extend the time for perfecting the lien where the time required for that work was not stated, but a charge of only one hour was made for it and for charging the batteries of the water and light system, for which no lien could be claimed.

5. ——: **Single Charge for Lienable and Nonlienable Work Does Not Extend Time.** Where lien claimant made a charge of but one hour for charging batteries for which he was not entitled to lien and for connecting a drain pipe which was part of the contract work, the court cannot divide the lienable and the nonlienable and permit an extension of the time for the perfection of the lien because of connecting the drain pipe.

6. ——: **Lien for Work Under Separate Contracts Must be Perfected Within Time After Completion of Each Contract.** Items for different contracts for work on the same building may be included in a single account filed as a lien, but that lien cannot be enforced for the entire work, unless it was filed within the special time after completion of the work under each contract.

7. ——: **Subcontractor, Who Failed to Perfect Lien, Can Recover General Judgment Against Contractor.** Under Revised Statutes 1909, section 8226, authorizing judgment against the debtor with right to levy on the property subject to mechanics' liens for unsatisfied portion, a subcontractor, who failed to file his lien claim within the time required to give him a lien against the property, can recover general judgment against the principal contractor for the amount of his claim, where principal contractor appeared and defended the case.

Appeal from Lawrence Circuit Court.—*Hon. Charles L. Henson*, Judge.

REVERSED AND REMANDED (*with directions*).

*D. S. Mayhew* for appellant.

*H. A. Gardner* for respondent.

STURGIS, P. J.—This is a suit to enforce a mechanic's lien against property owned by defendant. The defendant lived in and near Pierce City, Missouri, but had accepted employment taking him to Central and South America where he had resided for several years. He had acquired and maintained the property in quetsion as a home for his mother and sister who resided in a dwelling house thereon. The defendant returned at intervals to visit and see after his mother and sister and on one of these visits in the summer or fall of 1916 he determined to remodel and put modern improvements in this dwelling. Intending to leave again soon the defendant contracted with Frank Smith, a contractor, to do or have done this work. The defendant contracted with Smith to furnish the material and do the general plumbing work, also to install a water system and a lighting plant, each of said items at a fixed price amounting to $987.73. Plaintiff did this work as a sub-contractor of Smith. It was agreed that Smith would have general supervision of the work. It is also known that extra work and material would be necessary in connection with this part of the work and that Smith would order and be the judge as to such extras. The defendant then left the country and the work of remodeling his house was done in the winter and spring of 1916-17. Money was deposited in bank or furnished to Smith to pay for the work. Smith paid part of plaintiff's bill but not all. Defendant again visited his mother at Pierce City for a short time in October and November, 1918, and then went to NewYork City where he was when this suit was begun in February, 1919. Plaintiff.served constructive notice on defendant of his lien claim about February 1st and filed the lien claim with the Circuit Clerk February 15, 1919. This lien claim is as follows:
1916.

```
To Contract for Plumbing ............$224.85
To Contract for Water System ........  522.88
To Contract for Light Plant ....   ....  240.00
                                       _____
                                         987.73
Sept. 26, By Cash ......................  500.00
                                       _____
                        Balance ..........  487.73
Nov. 17, 50 Feet 10 Galv. Valley ............    3.45
    21, 30 Feet 12 Galv. Valley ...........    2.40
    29, 16 Feet 10 Galv. Valley ..........    1.05
                                       _____
                                         494.63
Dec. 7, By Cash ........................  300.00
                                       _____
                                         194.63
1917
Feb. 7, 20 lbs, 8d Case Nails ...............     .80
    Extras on Plumbing, etc. ..............  265.73
                                       _____
                                         461.16
May 18, By Cash ......................  200.00
                                       _____
                        Balance ....................  261.16
June 9, 21 3-4 lbs. Galv. Iron made to order ..    4.35
                                       _____
                                         265.51
1918
Oct. 18, Charging Batteries & Connecting
    Drain Pipes (1 hr.) ....................     .90
Nov. 23, Charging Batteries, 3 Hours with
    Helper ........... ....................    3.90
                                       _____
                                        $270.31
```

This account is accompanied by an itemized statement, without any dates, of the "extras on plumbing etc." charged at $265.73.

The defendant raised the question in the Circuit Court as to validity of the constructive service of the

summons by leaving a copy with his sister. Later how-
ever he filed an answer to the merits and went to trial.
By so doing he waived any question of service and this
point need not be considered.

The material question in the case is whether plain-
tiff perfected his lien within the statutory limit for filing
liens after the work and furnishing material is completed.
The plaintiff concedes that the validity of the lien de-
pends on the last two items dated October 18 and Novem-
ber 23, 1918. The defendant contends that these items
are merely colorable, not properly charged as a part of
the lien account and charged only to save the lien from
the Statute of Limitations.

It will be noted that the lien account is singularly
indefinite as to the dates of work done or materials fur-
nished. The plaintiff merely charges under the indefinite
date of 1916 the three contract items of plumbing $224.85,
Water System $522.88 and Light Plant $240 without
designating when the work was done or materials fur-
nished. He charges under date of February 7, 1917, the
items of "Extras on Plumbing etc.," amounting to
$265.73, though it is hardly possible that all the items of
work and labor set out, but not dated, were furnished
or performed on that day. Only five small items or
charges are definitely dated, three in November, 1916, one
on February 7, 1917 and one on June 9, 1917. These
items are evidently extras. Then there is an interval
of one year and four months followed by the two dis-
puted items in October and November, 1918. The evi-
dence is almost as indefinite and the most that we can
say is that plaintiff performed his contract jobs and
furnished the extras, other than the disputed items, dur-
ing the last half of 1916 and the first half of 1917. He
says he was delayed in his work by the carpenters as he
could do his work only as the carpenter work progressed.

While defendant does not raise the question of fail-
ure of plaintiff to do all the work as contracted, the
plaintiff admits that he never did complete the plumb-
ing job of installing a bath tub and lavatory because,

as he says, the bath room floor was not completed. This it seems was the fault of the contractor, Smith, who defaulted in his work and left it unfinished. Plaintiff's foreman having this work in charge said that the last carpenter work was done in the fall of 1917 and that this was the last of plaintiff's work also till the items of October and November, 1918. Plaintiff now says that it was defendant's fault that he has not completed his contract and that, having done all he could, defendant's indebtedness accrued nevertheless. [McCall v. Atchley, 256 Mo. 39, 164, S. W. 593; Holden v. Lyons, 175 Mo. App. 165, 157 S. W. 811.] Had plaintiff waited till he had completed the contract by installing this bath tub and lavatory and had included these items in his lien account, such might have extended the time for establishing his lien; but he did not do that and so has no items after June 9, 1917, except the disputed ones of October 18 and November 23, 1918.

It should be noted that the item of October 18th is for "charging batteries and connecting drain pipe (1 Hr) .90;" and that of November 23, 1918, is for "Charging Batteries 3 hours with helper 3.90." The trial court made a finding of facts and as to these items said: "The court finds that the last work done on this job by the plaintiff was the *connection of a drain pipe* on November 23, 1918, and that this work was done under plaintiff's contract with the defendant; but the court does not hold that charging of batteries by plaintiff about this date was work under the contract which would preserve plaintiff's lien." The trial court rejected the work of connecting batteries as a proper item of the lien account and sustained such account solely on the work of connecting the drain pipe which the court found was done on November 23. The lien account however has no charge for connecting drain pipe in the item for November 23, as that item is solely for charging batteries. The work of connecting drain pipe is included in the one hour's work on October 18. This accords with the evidence. As to the work done on November 23, the plaintiff's foreman testified that he did this work personally;

that on November 20 the defendant, who was then at Pierce City on a visit, called this foreman who was at work at Granby, Missouri, to come and do this work. The witness then continued:

Q. Now, these items here, furnished here, on November 20th, Mr. McReynolds called you from Granby? A. Yes, sir.

Q. What did he say he wanted done about the batteries down there? A. He wanted me to come and start the plant up, and charge the batteries, and also instruct him how to operate it.

Q. Had you ever done that up to the time? A. Yes, sir, only we never had shown him, because he wasn't there.

Q. Why did you do this work on November 23rd? A. Because Mr. McReynolds called me up, and requested that I come over and do it.

Q. For what purpose? A. To instruct him, so that he could use it.

Q. Then, there is an item charged on October 24th, of 90 cents for charging the batteries. Explain what that was for. A. The building wasn't complete yet, and we didn't want the batteries to run down, and we did that, went over and charged the batteries, to keep them from deteriorating.

Q. These batteries were in connection with the light plant? A. Yes, sir.

Q. Just explain to the court the nature of these batteries and what you have to do to them to keep them in working order? A. You have to keep them charged up. They are not supposed to stand longer than six months. They should be charged that often, if not oftener.

Q. What was your purpose in doing the work on that day, charging these batteries? A. We wanted to charge the batteries to keep them from running down.

Q. If that had not been done, state what the result would have been? A. The batteries would have deteriorated, and would have to have been renewed.

Q. That would have been an extra expense? A. Yes, sir.

Q. Now, when Mr. McReynolds called you up from Granby, with reference to this item, on November 23rd, it is the first time that he had been there? You acted in pursuance to his request? A. Yes, sir.

Q. Tell what you did with reference to his going over the plant, and to his accepting it. A. We went in and I started up the engine and charged the batteries, and also gave Mr. McReynolds instructions how to take care of the plant and operate it, etc.

Q. What did he say about it, if anything? A. He didn't say anything in particular any more than he was glad that I came over to show him how to run it. He was satisfied with the plant.

Q. He made no objection to it at the time? A. No, sir; made no objections.

Q. All this work was under a contract that had been made with Frank Smith? A. Yes, sir. McReynolds was gone before anything was done, and what transactions I had after he left was with Frank Smith. When he called me up from Granby, he said he wanted me to come over and show him how to run the plant, and charge the batteries. When I put this plant in down there, I had instructed Mr. McReynolds and his sister about the plant.

Q. You had charged the batteries and everything was in shape a year and a half before this last item occurred? A. I don't think it was a year and a half, it was back several months.

Q. Now, when you got this plant in, you instructed Mr. McReynolds, who lived there, and the sister, how to run this electric light plant? A. Yes, sir. It was fully equipped and in running order.

Q. You have it charged for charging the batteries in 1918, you have nothing in 1917. As a matter of fact, if it was in your contract to keep these batteries up, you had no right to charge for that. Is that a part of your original contract? A. Yes, sir,

Q. Then you had a right to charge for these items, because you had them in your original contract? A. There was nothing in the original contract about keeping up anything, because it was supposed that we would get our work done and be gone.

Q. Then, as a matter of fact, you were not under any obligations to charge these batteries at all? A. No, sir.

Q. This charging of these batteries you have here, did you put that in as extras, or was that a part of the original contract? A. That is a part of the original contract. We felt that it was our duty to do that anyway.

Q. Why did you charge for it? A. Well, we had been over there so much, his people were delaying us, and we felt like we ought to have some extra for doing that, although it wasn't specified as a contract, but we wanted to do that to keep the batteries up.

Q. You did that voluntarily? A. In a way we did, but we felt like we ought to make a charge for it.

Q. Let's get down to that in this original agreement. Were you to keep up these batteries? A. No, sir; because we didn't expect the thing to run that long.

The evidence shows that the light plant and water system were operated by one engine run by storage batteries. The light plant and water system had been put in and completed for more than a year. The batteries had to be recharged from time to time indefinitely. The defendant or his mother may be yet calling on plaintiff or someone else to recharge these batteries. Certainly the court was right in holding that such item was not a proper charge on the lien account. There was no evidence of any work of connecting the drain pipe on November 23, as found by the trial court.

As to the one hour's work on October 18th for which a charge of ninety cents is made, this same witness testified further:

Q. Now, in this item of October 18th, of charging batteries and connecting drain pipe, one hour, what is

the ninety cents for? A. *For an hour's labor in charg-ing the batteries.*

Q. For connecting this drain pipe, was that necessary? A. Sure it was necessary. That is for the waste when they turn the water off, so that the water can run out so that the pipes won't freeze.

Q. Was that necessary to complete the system of plumbing? A. Yes, sir; for that part, that is to let the water out, so that it will not freeze when full. If you don't do that your plumbing system is likely to freeze up and burst the pipes in the winter time.

This is the second time the witness had said that this one hour's work on October 18th was for charging the batteries. It was only when his attention was called thereto that he included in this work "connecting the drain pipe." Whether it took him five or ten minutes to do that work as a separate job he does not say. It seems to us clear that this connecting the drain pipe was a purely incidental and trivial job—a mere makeshift on which to hang an otherwise barred lien. We might also take judicial notice that plumbers make no charge for less than an hour for doing anything and having charged one hour only, embracing therein non-lienable work as the major part, the law cannot divide the good from the bad, the lienable from the non-lienable. [Dugan Cut-Stone Co. v. Gray, 43 Mo. App. 671, 677; Sweem v. Railroad, 85 Mo. App. 87, 95; Nelson v. Withrow, 14 Mo. App. 270, 277; Murphy v. Murphy, 22 Mo. App. 18.] It is said that a trivial payment should not destroy a lien nor a trivial charge uphold one. [Sweem v. Railroad, supra; Fire Extinguisher Co. v. Schwartz Bros., 165 Mo. 171, 65 S. W. 318; Great Western Mfg. Co. v. Burns & Co., 59 Mo. App. 391.]

It seems to me also that the evidence shows that the plumbing, to which the item of connecting the drain pipe belongs, was done under a separate contract, made at a different time, from the contract for the water system and the light plant. The plaintiff testified that: "The light plant and water system were in one proposal. . . . The plumbing was separate from the other two.

The other two were separate and distinct but there was one proposal for the light plant and the water system." At another place the witness said that he contracted to do the plumbing first and later made a contract as to the lighting plant and water system. It is held in Kern v. Pfaff, 44 Mo. App. 29, 35, that: "It is permissible to embrace in an account, filed as a lien, items for work on he same building under different contracts with the owner, but, in order to enforce the lien for the entire work, the evidence must show that the lien was filed within six months after the completion of the work under each contract." [See, also, Gauss v. Hussmann, 22 Mo. App. 115; Darlington Lumber Co. v. Harris, 107 Mo. App. 148.]

From what we have said the plaintiff is not entitled to a lien on the property. He is entitled to a general judgment, however, against Smith who appeared generally and defended the case. [Sec. 8226, R. S. 1909; Cahill, Swift & Co. v. McCornish, 74 Mo. App. 609, 614.] The judgment is therefore reversed and the cause remanded with directions to enter a general judgment for plaintiff against Smith for the same amount there specified and as of the date of the original judgment.

*Farrington* and *Bradley, JJ.,* concur.