PHILIP CAREY COMPANY, Appellant, v. KELLERMAN CONSTRUCTION COMPANY et al., Respondents.

St. Louis Court of Appeals.    Argued and Submitted October 8, 1914.    Opinion Filed November 3, 1914.

1. MECHANICS' LIENS: Right of Lien: Landlord and Tenant: Agency of Tenant. A landlord, by binding his tenant to make substantial improvements upon the demised property, constitutes the tenant his agent, within the mechanics' lien law, and may thereby subject his property to a lien for labor and material furnished in making such improvements; but the mere relation of landlord and tenant does not of itself create an agency in the tenant, authorizing him to bind the interest of the landlord in the property.

2. ——: ——: ——: ——: Lease Construed. A lease of a building provided that the lessee should have the right to sublet any part of it, and that if he desired any change made, in order to secure a subtenant, the lessor would pay for necessary labor and materials. The lessee sublet the roof of the building by a lease which contained no contractual obligation on the part of the subtenant to floor the roof, but which pro-

Carey Co. v. Construction Co.

vided that if the subtenant did floor the roof, he should be allowed to deduct from the rent one-half of the cost thereof. *Held*, that neither the lease nor the sublease constituted the tenant or the subtenant the agent of the owner and that the sublease did not constitute the subtenant the agent of the tenant, within the meaning of the mechanics' lien law, since each of the leases merely gave the respective tenants permission to make improvements, but did not bind them to do so, and hence the materialman who furnished material for flooring the roof of the building under contract with the subtenant was not entitled to a mechanic's lien.

3. ————: ————: ————: ————: ————. A lease of a building provided that the lessee should have the right to sublet any part of it, and that if he desired any change made, in order to secure a subtenant, the lessor would pay for necessary labor and materials. The lessee sublet the roof of the building by a lease which contained no contractual obligation on the part of the subtenant to floor the roof, but which provided that if the subtenant did floor the roof, he should be allowed to deduct from the rent one-half of the cost thereof, and that a designated architect should let all contracts for improvements. Plaintiff's proposal to do the flooring work, addressed to the architect and containing an offer to furnish flooring for the sublessee, was accepted by the architect in the name of the sublessee alone. In an action to enforce a mechanic's lien for flooring furnished in accordance with such proposal, *held* that the sublease did not make the architect the agent of the original tenant or the owner, within the meaning of the mechanic's lien law, and hence plaintiff was not entitled to a mechanic's lien for material furnished by him under the contract with the architect.

4. ————: **Evidence.** In an action to enforce a mechanic's lien, *held* that the trial court did not commit prejudicial error against plaintiff in admitting and excluding testimony.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*S. C. Rogers* for appellant.

(1) The court erred in giving the instructions and each of them in the nature of demurrers offered at the close of plaintiff's case by respondents, Kellerman

Contracting Company and Oliver P. Langan.   Ward v. Nolde et al., 168 S. W. 596; Section 8212, R. S. 1909; Section 8216, R. S. 1909, as amended by laws of 1911, page 312; Section 8234, R. S. 1909; Joplin Supply Co. v. West, 149 Mo. App. 78; Sash & Door Wks. v. Shade, 137 Mo. App. 20; Seaman v. Paddock, 51 Mo. App. 465; Winslow Bros. Co. v. McCully Stone Mason Co., 169 Mo. 236; Rogers v. Mining Co., 75 Mo. App. 114; Lumber Co. v. Greffett, 154 Mo. App. 33; Dougherty-Moss. Lbr. Co. v. Churchill, 114 Mo. App. 578; Curtin-Clark Hdw. Co. v. Churchill, 126 Mo. App. 462; Lumber Company v. Nelson, 71 Mo. App. 110; O'Leary v. Roe, 45 Mo. App. 567; McGuinn v. Mines & Milling Co., 160 Mo. App. 28; Sawyer & Austin Lbr. Co. v. Clark et al., 172 Mo. 588; Jodd v. Duncan, 9 Mo. App. 417.   (2) The court erred in finding under the facts and circumstances in evidence that appellant could not recover against respondents Kellerman Contracting Co., and Oliver P. Langan or either of them or the leasehold interests of respondents, Langan and Badaracco.   Ward v. Nolde et al., 168 S. W. 596; and the other citations under point I supra; 27 Cyc. 58; Flournoy v. Brick Const. Co., 159 Mo. App. 376.   (3) The court erred in holding under the facts and circumstances in evidence that appellant was not entitled to a mechanic's lien against the fee of the Kellerman Contracting Co., or the leasehold interest of respondents, Oliver P. Langan and Badaracco.   Ward v. Nolde, et al., 168 S. W. 596; citations under point I supra; 27 Cyc. 65.   (4) The court erred in admitting improper evidence on behalf of respondents over the objection and exception of appellant.   (5) The court erred in excluding proper evidence offered by appellant over the objection and exception of appellant.   (6) The trial court erred in overruling appellant's motion for a new trial.   In re McDonald & Son, 24 Am. B. R. 446, 178 Fed. 487; 25 Am. B. R. 948; Fischer & Co. v. Anslyn, 30 Mo. App. 317.

*Paul Bakewell, Jr.,* for respondent *Oliver P. Langan.*

(1)   In order to establish a mechanic's lien, plaintiff must show a contract with the owner of the land, or one who has some interest in the land. ʹThe lease from Langan to Badaracco devised only the roof of the building, and carried with it no interest in the land itself, hence there was no contract with any one who held any interest in the land itself.   Seidel v. Bloeser, 77 Mo. App. 172; Marble & Granite Co. v. Handlan, 85 Mo. App. 313; McMahon v. Vickery, 4 Mo. App. 225. (2)   There was nothing in the lease from Langan to Badaracco which could, by any construction, be held to constitute Badaracco as Langan's agent for the work done.   Lumber Co. v. Morris, 170 Mo. App. 212; Ward v. Nolde et al., 168 S. W. 596; McGuinn v. Mine & Milling Co., 160 Mo. App. 28.   (3)   The mere consent of the landlord to his tenant making repairs or alterations will not constitute the latter his agent.   Lumber Co. v. Morris, 170 Mo. App. 212; Winslow Bros. Co. v. McCully Stone Mason Co., 169 Mo. 236; Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578; Curtin-Clark Hardware Co. v. Churchill, 126 Mo. App. 462; Ward v. Nolde et al., 168 S. W. 596.   (4)   In order to constitute a tenant the agent of the landlord for the making of repairs, the landlord must have contracted with the agent for the making of the alterations or repairs, or obligated him to make such alterations or repairs to such an extent that the nonperformance of these obligations would work a forfeiture of the lease. See citations under points 2 and 3.   (5)   If Badaracco were Langan's agent he could not delegate his authority for the making of contracts.   Land & Lumber Co. v. Chrisman, 204 Mo. 371.   (6)   One may hold either the agent or his undisclosed principal, but he cannot hold both, and by electing to hold one, he thereby discharges the liability of the other.   Ames Packing & Provision Co. v. Tucker, 8 Mo. App. 95; Sessions v.

Block et al., 40 Mo. App. 569; Provenchere v. Reifess, 62 Mo. App. 50; Lumber Co. v. Greffet, 154 Mo. App. 33.

*Ferriss, Zumbalen & Ferriss* for respondent Kellerman Contracting Co.

(1) There was no contractual relation between plaintiff and the owner of the fee, Kellerman Contracting Company; hence, plaintiff is not entitled to a lien against the fee. Seidel v. Bloeser, 77 Mo. App. 172; Pickel Marble & Granite Co. v. Handlan, 85 Mo. App. 313; Dierks & Sons Lumber Co. v. Morris, 170 Mo. App. 212; Marty v. Amusement Co., 173 Mo. App. 709; Ward v. Nolde, 168 S. W. 601. (2) An agent cannot delegate his authority to a subagent. Chouteau L. & L. Co. v. Chrisman, 204 Mo. 378; Mechem on Agency, section 186. (3) Either the agent or his undisclosed principal may be held, but not both. Sessions v. Block, 40 Mo. App. 569; Provenchere v. Reifess, 62 Mo. App. 50; Lumber Co. v. Greffet, 154 Mo. App. 33; Mechem on Agency, section 696.

STATEMENT.—The statement of counsel for one of the respondents is so full and fair that we follow it with a few, mainly verbal, alterations, some omissions, and a few additions, letting this acknowledgment excuse the absence of quotation marks.

Bringing its action to obtain a personal judgment against certain of the defendants and to establish a mechanic's lien against the interests of all the defendants in a certain piece of property in St. Louis, the plaintiff was defeated both before the justice of the peace and the circuit court, in which latter court the case was tried without a jury. From the judgment against him in the circuit court plaintiff has duly appealed to this court.

There was no evidence offered at the trial to establish any liability against any of the defendants, Mississippi Valley Trust Company, George D. Kingsland, Arthur J. Fitzsimmons or Christian Stocke. These defendants did not appear at the trial and appellant does not now ask any relief as against them, so they are out of the case.

The defendant Badaracco had been adjudged a bankrupt, so that the question of his personal liability is also removed, and he is not represented on this appeal. Not paying rental, he surrendered or was put out of possession.

The relief now claimed on this appeal is a lien against the leasehold interest of Badaracco and Langan and against the fee of Kellerman Contracting Company and a personal judgment against the last two.

The record discloses that the Kellerman Contracting Company bought the fee to a lot at the southwest corner of Delmar and Euclid avenues in April, 1909, and that in September, 1909, it entered into a building contract with the defendant Oliver P. Langan, providing for the construction by the Kellerman Contracting Company of a six-story office, storage and warehouse building on the property, to be leased, upon completion, to Langan. A method was provided for determining the total cost of the lot and improvements, and Langan was to pay six per cent net per annum on this cost as rental for a term of fifteen years. It was at that time estimated that the total cost would approximate $300,000. Langan was given an option for a certain length of time to purchase the building at that cost price, which option could be renewed from time to time on terms stated.

Attached to this building contract was a form of lease in outline, to be executed upon the completion of the building. As this form was superseded by the lease actually executed by the parties, it needs no further attention.

This latter lease was executed in February, 1910, while the building was still in course of erection. It leases the entire property to Langan for a term of fifteen years from the date of the completion of the building "for store, office, storage and warehouse purposes." As it was then estimated that the total cost of the property would amount to $315,000, it was agreed that the lessee should pay an annual rental of $18,900, being six per cent upon that cost price, but it was also provided that if, upon completion, it was found that the cost price was not $315,000, then the lessee should pay six per cent net upon whatever the cost price was. There was the further provision (and it is this provision upon which plaintiff relies) that if the lessee desired to have any changes made in the plans, or any additions or alterations made, for the purpose of procuring a valuable tenant for the building, the owner would pay the cost of the necessary labor and materials, provided such additional cost did not exceed $10,000, and if such additional cost raised the total cost to more than $315,000, the lessee would pay additional rental based on six per cent of the increased cost.

The lessee was given the right to sublet any part of the premises without the consent of the lessor, but· could not sublet the whole of the premises without such consent. The lease also affirmed the option of the lessee to purchase the building upon the terms expressed in the original building contract. There is no evidence as to whether this option was exercised or renewed or is still existent.

The record further discloses that the building was actually completed and turned over to the lessee, Langan, in the following October. A settlement was then reached with Langan regarding the total cost price, which was found to be, not the estimated $315,000, but approximately $334,000; the rental was accordingly fixed at $20,000 per year and has been that ever since.

No alterations were thereafter made by the owner and no others were requested by the lessee.

On April 14, 1911, the lessee, Langan, sublet the entire roof of the building to Badaracco, the roof then being an ordinary gravel roof. This lease, after setting out that the roof leased was to be used as a roof garden and for no other purpose, for a term of four years, commencing on June 1, 1911, and to end May 31, 1915, at the annual rental of $1500, payable quarterly in equal installments, sets out, among others, these conditions: Payment of the rental at the times specified; the surrender of the premises at the end of the term in as good condition as received, ordinary wear and tear excepted, and that "no alterations, additions or improvements shall be made in said premises without the written consent of the lessor, and any alterations, additions or improvements which may be made shall be and remain the property of the lessor, and be surrendered with the premises as a part thereof at the termination of the lease." Then folows this, stated as part of the consideration between the parties: That "the lessor will do and perform at his own cost and expense, the following things, and in default of them or any of them, will suffer the damages hereinafter stipulated; that is to say, the lessor will pay and agrees to permit the lessee to deduct from the rent due after the first installment of rent, one-half of the cost of flooring the roof of said building, in such flooring as said lessee may elect to put therein, including the flooring of the various buildings or compartments established upon said roof, the lessor's share to be paid shall not exceed $250." Then follow an enumeration of various things which the lessor agrees to do, such as putting in a flue, erecting a railing around the elevator shaft, erecting a corrugated iron room to be used as a service bar for the lessee, and it being covenanted that the lessor shall give the les-

185MoApp23

see the exclusive use of all buildings upon the top of the roof, except the storage tank buildings, the lessee having the right to use the roof thereof. It is further agreed that should the lessor "within a reasonable time after the execution of this lease, fail to carry out, furnish or supply, or do any of the things hereby agreed to be furnished, supplied or done by the lessor, the said lessee is hereby authorized to furnish, supply, install, erect and furnish any and all of said things required to be done by the said lessor, and to pay for the same, and to deduct the cost and expense thereof from the installments of rent due under this lease after the first installments; and it is further agreed that all the requirements of this agreement to be done and performed by the said lessor, whether performed and done hereunder by said lessor or said lessee, John D. Paulus, architect, shall superintend all the work done under this agreement, and shall let all contracts in such capacity, and his decision as to the manner and how such work shall be done, shall be final and binding upon both parties hereto; all contracts to be subject to approval of both parties hereto." This covers the material portions of the lease between Langan and Badaracco necessary to be here considered.

On June 19, 1911, the plaintiff addressed its bid for furnishing such roofing to "John D. Paulus, Architect," starting out thus:

"We propose to furnish and apply Carey's roofing prepared for roof garden purposes on the Langan & Taylor Building for Jos. Badaracco for the sum of $4 per square."

Then follow detailed specifications. At the foot of the page upon which this proposal was written Paulus wrote:

"Accepted," and signed it, "Joseph Badaracco, Jr., per John D. Paulus, Arch't."

The plaintiff proceeded to furnish and apply the roofing, but neither Badaracco nor any one else made payment for it. Hence this action. Badaracco having been adjudged bankrupt, as stated, and failing to pay rental, Langan forfeited the lease to him.

Plaintiff in due time and form took the steps required by statute to fix a lien, the sufficiency of which steps are not challenged.

It does not appear that in the matter of subletting the roof to Badaracco, the negotiations for applying the new roofing thereon, the contract for it and the actual performance of the work, the fee owner, Kellerman Contracting Company, was consulted or advised. The plaintiff did not know or deal with the Kellerman Company in the matter; neither did Badaracco nor Paulus. Langan, of course, knew of the relation of Kellerman Contracting Company to the premises, but it does not appear that he either dealt with plaintiff or with Badaracco or Paulus in this matter.

The original roof was an ordinary pitch and gravel roof, rough, as such roofs usually are. The purpose of putting flooring over it was to afford a smooth surface. The new material of which this flooring was composed was a paper preparation, attached to the roof by pitch, with seams cemented, and white sand rolled on top with a heavy roller.

Mr. Kellerman, president of the Kellerman Contracting Company, and a practical builder of thirty-five years' experience, testified that this covering did not improve or strengthen the roof, but, on the contrary, damaged it, as it would permit water to get underneath, between it and the original roof, and rot it; that at the end of fifteen years the new covering would not be of any substantial betterment to the property, but the contrary. This was objected to by plaintiff, it claiming that the roof was only guaranteed for five years and that plaintiff was not responsible for

its durability; that all it sought was pay for the work done and material furnished.

The lien statement filed December 6, 1911, shows that plaintiff claims to have been an original contractor with the Kellerman Contracting Company for the doing of this work; it is therein stated the work was done under contract with the Kellerman Contracting Company and others, "by and through its and their agents, Joseph Badaracco, Jr., and John D. Paulus." The same allegation is made in the petition; also the further allegation that Paulus was to let contracts for improvements "subject to the approval of said Kellerman Contracting Company;" that "it was understood by and between defendant Kellerman Contracting Company and Langan et al., that the building should be altered and improved, as provided in said lease of defendant Langan to defendant Badaracco;" that "said defendants (including Kellerman Contracting Company) agreed to pay plaintiff therefor," etc.

After hearing all the plaintiff's evidence, the court sustained a demurrer to it offered by defendants Langan and Kellerman Contracting Company, and gave a declaration of law to the effect that plaintiff could not recover. Then followed this appeal.

REYNOLDS, P. J. (after stating the facts).— Counsel for the parties have presented very elaborate briefs and arguments in support of their respective contentions, counsel for appellant, in particular, raising many points and indulging in an exceedingly ingenuous argument in support of his contentions. We do not consider it necessary to go into these arguments in detail. After all, the points for decision are few and simple. We have made rather an elaborate statement of the facts, setting out the material parts of both leases, that to Badaracco with considerable detail, because we think that a consideration of the leases, in the light of the very recent decision of our Supreme Court

in Ward v. Nolde et al., not yet officially reported, but see 168 S. W. 596, and of the cases from the Courts of Appeals therein cited determines the questions. In Ward v. Nolde, supra, the learned Commissioner who wrote the opinion has quoted from Curtin-Clark Hardware Co. v. Churchill, 126 Mo. App. 462, 104 S. W. 476, at some length and also the very terse statement of Judge GRAY in McQuinn v. Federated Mines & Milling Co., 160 Mo. App. 28, 141 S. W. 467. He also cites and quotes from O'Neil Lumber Co. v. Greffet, 154 Mo. App. 33, 133 S. W. 113. In these cases we find the rule laid down as applicable to cases arising under our mechanic's lien law, particularly section 8234, Revised Statutes 1909, to be to the effect that where the landlord binds the tenant to make substantial improvements upon the property, he thereby constitutes the latter his agent within the meaning of the mechanic's lien law and thereby may subject his property to the lien for labor performed and material furnished in making such improvements under a contract with the tenant. But it is the settled law in this State, as shown by those decisions, that the mere relation of landlord and tenant, does not, in itself, create an agency in the tenant, authorizing him to bind the interest of the landlord in the property. That obligation must spring from contract, express or implied, between the landlord and tenant, and apart from the mere relation of landlord and tenant.

With the lease from Kellerman Contracting Company to Langan and the sublease from Langan to Badaracco before us, we find no words that can be construed into constituting either the tenant or the subtenant the agent of the owner in making improvements. Throughout both leases it is apparent that there is a mere permission given to the tenants to make improvements, alterations and repairs; in some contingencies, a promise of the landslords to make them; but no contractual obligation on the part of the tenant or sub-

tenant to make them. It is true that the landlords in each case have contracted to reimburse the tenant and subtenant, to a certain extent, for alterations, additions or improvements they may make on the premises. This, however, falls far short from constituting the tenant or the subtenant agents of these landlords. It may be that in a proper action the materialman or contractor might become subrogated to the right of the tenant for compensation for material furnished or work and labor done on the premises, but that is not this case. So far, then, as either the tenant Langan or the subtenant Badaracco being the agents of their respective landlords or of either of the landlords, we hold, on authority, that they were not.

But it is said that under the lease from Langan to Badaracco, the architect, Paulus, became the agent of Langan in respect to work done in the roofing over the construction of which roofing this controversy arises. The clause in the lease which we have quoted is relied upon for support of this claim. When we examine that clause carefully and consider it in connection with the other provisions of this sublease, as we are bound to do, we are unable to sustain this claim of the learned counsel for appellant. It is true that it is there provided that the architect "shall superintend all of the work done under this agreement, and shall let all contracts in such capacity." Considering that clause in connection with the other provisions of this sublease, its meaning is clear. The lessee was to do certain things in connection with the alteration of the gravel roof into a roof suitable for a roof garden; the lessor was to do certain things, for instance to install certain appliances, and the architect is invested with power to let the contracts calling for the doing of these things, it being agreed that his decision as to the manner and how such work shall be done "shall be final and binding upon both parties hereto." As we read this, the word "each" would have more accurately

expressed the plain intent of the parties than does the word "both." The obvious meaning of it, as it seems to us, is that if the lessor selected or directed work to be done, then, as to that work, the letting of the contract for it, whether it was done as contracted for, its cost, the conclusion of the architect was binding on the lessor. So also as to work which the lessee was to do and which he had done through the architect. In short, the architect was the agent of the party for whom he acted, and neither could challenge his acts or conclusions. That this was the understanding of the parties is clear by the manner in which the pro- posal for which this particular work was made and ac- cepted. The proposal, as we have noted, is addressed to the architect. It starts out with the statement that plaintiff company proposed to furnish and apply a cer- tain kind of roofing on the Langan & Taylor Build- ing "for Jos. Badaracco, for the sum of $4 per square." It was accepted by the architect, not in the names of Langan and of Badaracco, but in the name of Jos. Badaracco, Jr., alone. So that it is clear that in this particular instance the architect was acting for Ba- daracco alone and did not purport or undertake to act for or bind Langan. There is nothing whatever in the lease or in the acts of the parties to show that Lan- gan had anything to do with this contract, or that in accepting this bid of plaintiff company the architect was acting as his agent. We find nothing in the Ba- daracco lease or in the acts of the parties from which the conclusion can be drawn that the architect in ac- cepting the bid of plaintiff, appellant here, was acting for any one other than Badaracco. Beyond all ques- tion the architect was in no sense the agent or acting for Langan, much less was he a subagent of Keller- man Contracting Company.

This disposes of the only points in this case that we consider necessary to determine.

Learned counsel for appellant make several as-
signments of error as to the introduction and exclu-
sion of testimony, one of which we have noted as the
chief. The trial was before the court without a jury.
Examining all of the testimony and the action of the
trial court on its admission and exclusion, we cannot
say that he committed any reversible error prejudicial
to appellant. The conclusion he arrived at in finding
for plaintiff is supported by substantial testimony and
as we think on a correct application of the principles
of law which must govern this case.

The judgment of the circuit court is affirmed. *Nor-
toni* and *Allen, JJ.,* concur.

