CARROLL CONTRACTING COMPANY, a Corporation, Respondent, v. W. D. NEWSOME, Defendant, MERCHANTS & CONSUMERS MARKET HOUSE ASSOCIATION, a corporation, Appellant.

St. Louis Court of Appeals. Argued and Submitted October 10, 1918. Opinion Filed November 6, 1918.

1. **APPELLATE PRACTICE: Objections and Exceptions in Trial Court: Sufficiency for Review: Mechanics' Liens.** In an action for excavation work and to establish a mechanic's lien, objections made throughout the introduction of testimony, as well as a demurrer to the evidence offered at the conclusion of the evidence, *held* sufficient to raise the point that the owner was not bound by any contract between it and another defendant, which rendered its property liable for a lien for the work done, or whether the other defendant in making the contract for the excavation was acting as agent for the owner so as to bind it.

2. **MECHANICS' LIENS: Contracts: Contract Between Owner and Contractor: Rights of Sub-Contractor.** To maintain a lien against the owner by a subcontractor, it must appear that the work was done by the contractor under a contract with the owner of the property; that he had a valid, subsisting contract with the owner of the property for doing the work and furnishing the material.

3. ——. ——: **Contractor Mere Licensee: Rights of Sub-Contractor.** Where under the contract of a corporation and principal stockholder for erection of a building, etc., the contractor was a mere licensee and was under no obligation to enter upon and go on with the work, he cannot bind the property of the owner for the work done and improvements which he made upon it.

4. **APPELLATE PRACTICE: Disposition of Case: Remanded for Further Proof: Mechanics' Liens.** In an action by a subcontractor

to enforce a mechanic's lien, after reversal because under the contract the contractor was a mere licensee, not obligated to enter upon and go on with the work, if the subcontractor can show that there was an agency between the owner and contractor, or that the contract between them was a mere subterfuge, etc., it is entitled to do so, and to have the case remanded to permit it.

5. MECHANICS' LIENS: Lienable Items: Quantum Meruit or Contract. Where a subcontractor endeavors to establish a lien against the realty, he can charge the realty alone only for such work, labor, or materials as are lienable, and this is true whether the action is on *quantum meruit* or under contract.

6. ——: ——: Charges for Superintendence: Lienable Character. A subcontractor's charges for superintendence as well as that for the foreman, the subcontractor being a corporation, and the charges not being those of an individual for his own superintendence, *held* lienable items.

7. ——: ——: Excavations: Excavation for Foundation: Abandonment of Project. Services and labor performed in the excavafor a foundation, although the project was afterwards abandoned and no superstructure erected, *held* lienable.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Glendy B. Arnold*, Judge.

AFFIRMED (as to Defendant Newsome).

REVERSED AND REMANDED (as to Defendant Merchants & Consumers Market House Association).

*Robert W. Hall* and *Charles A. Houts,* for appellant, Merchants & Consumers Market House Association.

The term "improvement" as used in section 8212, R. S. 1909, is synonymous with "building" and does not include engines and boilers. Collins & Holliday v. Mott, 45 Mo. 100, 1. c. 102. An improvement is something attached to the property and not the property being turned over or moved, but must be some absolute physical attachment to, and something which fastens itself to and becomes a part of the land, thereby enhancing the value of the property. Richardson v. Koch et al., 81 Mo. 264; Springfield F'dry & Machine

Co. v. Cole et al., 130 Mo. 1. In the case of Holzhour v. Meer et al., 59 Mo. 434, l. c. 437, it is held: "Here there was no labor performed for erecting anything on which a lien could attach. Nothing was put on—no improvements were made. The work was for tearing down an old building, a thing for which the statute gives no lien. . . . A lien may be taken against buildings and improvements without the land, but cannot be taken against the land alone, unless these necessary attachments are upon it." See the cases of Bruns v. Braun, 35 Mo. App. 347. Reilly v. Hudson, 62 Mo. 385; Allen v. Mining Co., 73 Mo. 692." In the case of Henry v. Plitt, 84 Mo. 237, it was held that a lien would not attach for fences and walks unless constructed as pertaining to the building and must be included in one entire contract. (This law has since been changed by special amendment.) Where a mechanic has so intermingled his lien claim with non-lien items that the exact amount for which he is entitled to a lien cannot be readily ascertained by inspection of the claim, the whole lien must fail, whether the error was intentional or unintentional. Carthage Limestone Co. v. Methodist Church, 156 Mo. App. 671, l. c. 673.

*J. D. Johnson, Amici Curiae.*

There can be no lien judgment under the pleading. The petition alleges that the owner, the Market Association, contracted for the work with W. D. Newsome and that Newsome in turn contracted with plaintiff. Plaintiff claims as subcontractor. But the evidence shows that there was no contractual relation whatever between the Market Association and Newsome. Plaintiff is not a subcontractor and therefore could not recover on this petition, even if the evidence disclosed a right to recover upon some other cause of action not pleaded. Cole v. Armour, 154 Mo. 333, 350; Bagnell Timber Co. v. M. K. & T. R. R. Co., 180 Mo. 420, 460. (2) On the facts the owner never contracted; hence there is no lien. But plaintiff is not entitled to a lien under the facts of this case under any pleading that

could be drawn. Newsome merely had a license from the Market Association to excavate for a limited time, at his own cost, with express exclusion of all rights in the realty and upon bond to protect the Market Association. Newsome could act under that license, or not, as he saw fit. The Market Association could be bound by a lien only if it was made obligatory on Newsome to excavate. Hence there is no lien against the Market Association. Lumber Co. v. Harris, 131 Mo. App. 94; O'Leary v. Roe, 45 Mo. App. 567; Hardware Co. v. Churchill, 126 Mo. App. 462; Ward v. Nolde, 259 Mo. 285; Carey Co. v. Construction Co., 185 Mo. App. 346; Weis v. Gardner, 198 Mo. App. 35. (3) Not only is the document under which Newsome acted a license, and nothing more, but it also conclusively appears from that instrument, in harmony with everything disclosed in the evidence, that the Market Association disavowed all connection with what Newsome might see fit to do. The possibility that Newsome was in any sense an agent of the Market Company is excluded. This should lead to a simple reversal of the judgment. No purpose would be served in remanding the case. (4) There was no building or improvement, hence there is no lien. All that was ever done was to remove part of the soil. So far from being an "im-inprovement," it was the reverse. A lien cannot be taken against land alone. The lien can originate only in some building or improvement. Holzbauer v. Meier, 59 Mo. 434; Schulenburg v. M. C. & N. W. R. R., 67 Mo. 444; Shinn v. Heimburger, 60 Mo. App. 174. (5) A suggestion that a building, to follow on this excavation, was contemplated, would not affect the foregoing point. Even if we admit contemplation of a future building, the fact remains that no lienable work was ever done on this realty, and the doctrine is that no lien can come into existence until there has been some actual building. (6) Moreover, if there was an intention, on the part of some one, to build on this realty, not a thing toward building has even been done. No contract toward that end was ever entered

into by any one. Whoever had such intention could abandon it at any time without incurring any obliga- tion to any one, as was actually done in this case. A mere intention, never put into a form involving an obligation on some one, cannot be the basis of a lien.

*Connett & Currie* for respondent.

(1) The mechanics' lien law is now construed liberally by our appellate courts on the ground that it is a highly remedial piece of legislation, and should receive a most liberal construction. Sash & Door Works v. Shade, 137 Mo. App. 20, 1. c. 23; Cornice & Roofing Company v. Trust Company, 146 Mo. App. 36, li c. 49. (2) Excavations and fundations for a building are with- in the lien law, even though the building is not com- pleted, and the right to a lien for work done in the construction of a building is not dependent upon whether the building is actually completed but upon whether the construction is commenced. If this is done and lien- able work is done in aid thereof, the right of lien thereby becomes perfect and cannot thereafter be defeat- ed by any act of the proprietor. 27 Cyc, page 36, paragraph 6; 27 Cyc, page 41, paragraph 16; Helm v. Chapman, 66 Cal. 291; Baker v. Waldron, 92 Me. 17; Carew v. Stubb, 155 Mass. 549; Sumerville v. Walker, 168 Mass. 388; Scott v. Goldinghorst, 123 Ind. 1. c. 270; McCrystal v. Cochran et al., 147 Pa. State 225; Andrews v. St. Louis Tunnel Railroad Co. et al., 16 Mo. App. 229, 1. c. 303; Rapauno Chemical Co. v. Greenfield & Northern R. R. Co., 59 Mo. App. 6, 1. c. 10, 11 and 12; Darlington Lumber Co. v. Westlake Construction Co., 161 Mo. App. 723; Bruns v. Braun, 35 Mo. Ap. 337. (3) The statute requires that the account should be a just and true statement of the real transactions between the parties and if the contract provides for a lump price, then it is proper that the lien should set out the lump price and should not attempt to arbitra- rily apportion among the various items the different prices which go to make up the lump sum of the total aggregate, and this is true even when the lien is sought

to be established by a sub-contractor. Press Brick Co. v. Construction Co., 177 Mo. App. 573, l. c. 581; Buchanan v. Cole, Mo. App. 57, page 11, l. c. 18, 19; McDermott v. Class, 104 Mo. 14, l. c. 23 and 24; Miller v. Whitelaw, 28, Mo. App. 639, l. c. 641-642; Grace v. Nesbit, 109 Mo. 9, l. c. 17, 18 and 19; Deardorff v. Roy, 50 Mo. App. 70; Dallas v. Braun, 60 Mo. App. 493; Sossman v. Condon, 57 Mo. 25; Mitchell Planing Mill Co., v. Allison, 138 Mo. 50. (4) The lien was properly admitted and does not contain anything which makes the account nonlienable. Lumber Co. v. Pottinger, 165 Mo. App. 442, l. c. 449-450; Machinery Co. v. Roney, 185 Mo. App. 474, l. c. 479-80. (5) The appellant's point that the Court erred in refusing to file in writing its finding of fact and declaration of law, is not well taken because the appellant submitted to the court certain declarations of law and asked the court to give them, which the court refused to do on the ground that they did not state the law properly, and having asked these declarations of law, the appellant was not entitled to have the trial court also make its finding of facts. Furthermore, the appellant did not request in writing, as required by statute, that the court make written finding of facts separate from its conclusions of law. Besides, there is no conflict in facts in this case and therefore it was not necessary for the court to make any finding of fact. Kostuba v. Miller, 137 Mo. 161; German-American Insurance Co. v. Tribble, 86 Mo. App. 546. (6) The point which the *amicus curiae* attempts to raise that there was not a contract between Newsome and respondent cannot be raised in this court because it was not raised by the appellant or anyone in the trial court. *In re* Birmingham Drainage District, 266 Mo. 60, l. c. 67; Kirksville v. Ferguson, 262 Mo. 661, l. c. 670; Donijanovic v. Hartman, 169 Mo. App. 204, l. c. 210-211; Allen v. Lumber Co., 171 Mo. App. 492, l. c. 506.

REYNOLDS, P. J.—Plaintiff, respondent here, brought his action against one Newsome for certain excavation work done in the cellar or basement of a

building proposed to be erected in the city of St. Louis, and to establish a mechanic's lien against the owner of the land, Merchants & Consumers Market House Association, the latter hereafter referred to as the Market House Association. His petition is in two counts. The first is on *quantum meruit,* the second on contract. The amount claimed under each is $4672.42.

At a trial before the court, a jury having been waived, the court found for plaintiff against the defendant Newsome on the second count of the petition in the sum of $4667.42, principal and interest, the latter from Octoober 14, 1914, to June 14, 1915, and adjudged it to be a lien against the property of the defendant Market House Association, finding for the defendant on the first count of plaintiff's petition.

Filing a motion for new trial and excepting to the action of the court in overruling it, the Market House Association has duly appealed. Defendant Newsome did not appeal.

The second count sets out that plaintiff and the defendant Newsome entered into a contract to the effect that the plaintiff should and would provide all the materials and perform all the work in the excavation for the building known as the Merchants & Consumers Market House Association Building, and that the plaintiff should receive from defendant Newsome, for such work and labor the sum of $6328, said work to be done in accordance with the drawings and specifications prepared for said building by C. B. Yoder & Company, architects; that thereafter, and about September 15th, plaintiff, in performing the contract, commenced the work of excavating for the building, in accordance with the drawings and specifications, on the lot described, upon which the proposed market house building was to be erected and constructed, and that continuously from and after September 15th, up to and including October 7, 1914, plaintiff did and performed the work and labor in and about the excavation for the building and duly performed all the conditions of the contract on his part to be performed, up to and including October 7, 1914;

that plaintiff had excavated and removed from the excavation for the market house building 13,514 cubic yards of earth, the work having been done down to and including October 7, 1914, being and amounting to eighty-nine and nine-tenths per cent. of the entire amount of work required to be done under and in accordance with the terms of the contract between plaintiff and defendant.    Then follows the itemized account.    This consists of items commencing with the date September 15, 1914, and including that date ends with and includes October 7th of the same year, showing the number of hours of labor thus:

> "Foreman . . . . . . . . . . . . . . . . . . . . . 20 hours
> Laborers . . . . . . . . . . . . . . . .  . . . . . . . . 60 hours
> Steam Shovel . . . . . . . . . . . . . . . . . . 10 hours
> Wagons . . . . . . . .  . . . . . . . . . . . . . . . . . 70 hours
> Teams . . . . . . . . . . . . . . . . . . . . . . . . 70 hours
> Superintendant . . . .    . . . . . . . .    10 hours."

No amount is given as showing the charges per hour.

In addition, under date of October 7th, is the item, "6750 feet of lumber for runway, supplies for pipe line, hose, pipe and fittings," and closes with this entry:

> "Total price for excavation done, . . . . $5,688.87
> By cash paid on account by W. D.
> Newsome, September 30th, 1914 . . . . . . $1200.00
> Balance due . . . . . . . . . . . . . . . . . . . . .  $4488.87."

Following this it is set out that it was understood between Newsome and plaintiff that plaintiff was to receive payment from Newsome every two weeks for the work it had completed, less fifteen per cent. of the amount due according to the estimate of the architects in charge of the building and work.    Averring that Newsome had paid $1200 of this on account and no more, it is averred that the balance due, according to the terms of the contract, amounted to $4488.87, which Newsome had refused and neglected to pay, and that on October 7, 1914, Newsome abandoned his contract and refused to perform any of the conditions thereby imposed upon him although plaintiff was ready, willing and able to complete the excavation required for the erection of the pro-

posed market house. Averring that the sum charged is the reasonable price and value of the work, it is averred that the balance is still due. It is further averred that this work and labor was done and performed in and about the excavation for the basement of the market house building proposed to be erected on the land described, and that at that time and when the work was done, this land was the property of the Market House Association; that Newsome was the original contractor with defendant Market House Association for the excavation required in the erection of the market house proposed to be erected upon the described lot; that the demand became due on October 7, 1914. Following are averments showing filing of lien, due notice, etc., and judgment is demanded for $4488.87, with interest at the rate of six per cent per annum from October 7, 1914, and costs and that it be declared a lien against the property described.

Newsome filed an answer, denying each and every allegation contained in the petition, and all knowledge or information sufficient to form a belief thereof and prays judgment. A motion to strike this out was filed and overruled.

The defendant Market House Association filed a demurrer to the petition, which was overruled and exceptions saved. It then filed an answer, denying all the allegations of the petition. Subsequently it filed a motion to elect between the two counts, averring that the first was on a *quantum meruit* and the second upon a contract. This was overruled, defendant excepting.

The deposition of defendant Newsome was taken in the case and filed and read by plaintiff at the hearing.

The articles of association of the Market House Association were in evidence, by which it appeared that it was formed for the purpose of erecting a market house, the corporation incorporated with a named capital of $125,000, divided into 1250 shares, of which Diesing owned 646 shares, his wife, brother-in-law and other parties owning a share each, Victor

Diesing and these parties being named as the first board of directors, Diesing being president.

Plaintiff, to sustain the issues on his part, introduced an agreement, of date September 14, 1914, between itself, a corporation, as party of the first part, and W. D. Newsome, party of the second part, for doing the excavating for the price and sum of $6328. Plaintiff then introduced in evidence an agreement of date September 12, 1914, between Victor Diesing and the Merchants & Consumers Market House Association, parties of the first part, and W. D. Newsome, as party of the second part, which reads:

"This agreement entered into this 12th day of September, 1914, between Victor Diesing and the Merchants & Consumers Market House Association, a corporation, parties of the first part, and W. D. Newsome, party of the second part, witnesseth:

"1st. The parties of the first part hereby grant unto the party of the second part the right to begin, and to continue until the 12th day of October, 1914, the excavation required in the erection of a market house proposed to be erected on the property of the parties of the first part, situated on the north line of Laclede Avenue one hundred and fifty (150) feet west of the west line of Vandeventer Avenue in the city St. Louis; said excavation to be made in accordance with the plans and specifications hereto attached and made a part hereof.

"2nd. The party of the second part agrees to pay the entire cost of such excavation, and shall save and hold harmless the parties of the first part from all claims, liens or demands which may in any way arise from the prosecution of the work of excavation hereby permitted, including all claims for damages of every kind, nature or description which may be made against the parties of the first part, or either of them, in any way arising from the making or maintaining of said excavation on said property.

"3rd. The making of this contract by the parties. hereto and the prosecution of the work of making said excavation by the party of the second part shall in no wise be construed as giving to the party of the second part any rights in and to said property except such as are herein defined.

"4th. Nothing herein contained shall be construed as preventing the party of the second part from being reimbursed by the Merchants & Consumers Market House Association for his expenses in connection with the making of said excavation if said party of the second part and his associates should secure control of said Merchants & Consumers Market House Association under the option contract now existing between the party of the second part and the said Victor Diesing.

"5th. The party of the second part agrees to furnish to the parties of the first part a good and sufficient bond in the sum of six thousand dollars ($6000.00), to secure to the parties of the first part the performance by the party of the second part all the terms of this agreement by the latter to be performed.

In witness whereof, the parties hereto have executed this instrument this 12th day of September. 1914.

(Signed) VICTOR DIESING
Merchants & Consumers Market Association.
By (Signed) VICTOR DIESING, Pres.,
Parties of the first part.
(Signed) W. D. NEWSOME,
Party of the second part."

It was also in evidence that Newsome had given a bond to Diesing and to the Merchants & Consumers Market House Association in the penal sum of $6000, conditioned that as Newsome had entered into an agreement with Diesing and the Merchants & Consumers Market House Association, whereby he had agreed and bound himself to hold harmless the said Diesing and Market House Association from all claims, demands, liens or damages arising from the making and maintaining of an excavation in the contract above set out.

The American Surety Company of New York is surety on this bond.

Evidence was introduced showing the amount of work that had been done, its value and its proportion to the whole work to be done.

At the conclusion of the introduction of the evidence in the case the Merchants & Consumers Market House Association demurred to the evidence, asking a peremptory instruction to the effect that under the law and the evidence plaintiff was not entitled to a special judgment establishing a lien against the property. The court refused this, this defendant duly excepting. Motions for new trial as well as in arrest were filed by this defendant and these being overruled and exceptions saved, the appeal followed.

A member of the bar of our court, by leave, filed a brief with us in the name of the defendant Market House Association, that counsel representing the surety company named. It had not been represented at the trial.

It is objected by learned counsel for respondent that as the principal point raised by this counsel in his brief is not included in the brief of counsel of record for the appellant, nor in his assignment of errors, and was not specifically mentioned at the trial of the cause, that we are not to consider this brief nor the points made in it. The principal point there made and relied on by that counsel as *Amicus Curiae* is, that the evidence in the case shows affirmatively that Newsome was a mere licensee and in no sense contractor with the Market House Association and does not appear to have been its agent in the matter. It is true that this point is not made nor argued by counsel of record for the appellant, but at the trial there was a demurrer to the evidence as not sufficient to entitle plaintiff to recover. We cannot say what reasons were urged in support of the demurrer, for anything appearing to the contrary, this point may well have been urged in support of the demurrer, but by repeated objection to the admission of evidence, counsel for appellant did

make the point that no case was made out to charge the Market House Association; that the lien paper was not admissible "for the reason that there has been no foundation laid; that it is being introduced at an improper time," etc. Again, when the notice of the claim to a lien was offered, counsel for the Market House Association said: "I believe I can offer a general objection to the introduction of any evidence without specifically making my same old objection here and filling up the record and taking up time. I make the objection to any of the questions with reference to the work done there in accordance with the objection I have made to the lien paper that the court will understand it with the understanding that the same objection goes to each of these questions," etc. The objection being overruled, counsel for appellant, Market House Association, further said that he was "only making this objection as far as the owner of the property is concerned." These and similar objections made throughout the introduction of testimony, as well as the demurrer, were sufficient to raise the point that the Market House Association was not bound by any contract between it and Newsome which rendered its property liable for a lien for the work done, or whether Newsome, in making the contract for the excavation, was acting as agent for the Market House Association so as to bind it. On this state of the record, we think that question was left open for our consideration.

It is the well established law of this State that to maintain a lien against the owner by a subcontractor, it must appear that the work was done by the contractor under a contract with the owner of the property; that he had a valid, subsisting contract with the owner of the property for doing the work and furnishing the material. That is clearly settled by our Supreme Court in Ward v. Nolde, 259 Mo. 285, 168 S. W. 596. Our own court followed it in the case of Carey Co. v. Kellerman Construction Co., 185 Mo. App. 346, 170 S. W. 449. We refer to these opinions and the cases therein cited

201 M. A.—9

as settling this point in favor of the contention of the appellant.

It follows, that on the face of the contract in evidence between Diesing and the Market House Association, on the one side, and Newsome on the other, Newsome was a mere licensee and was under no obligation to enter upon and go on with the work, and consequently cannot bind the property of the owner for the work done and improvements which he made upon it.

We might close here as this is fatal to respondent's case, but as counsel on either side have raised other points which are in the case and deserving of attention, we will very briefly refer to them, especially in view of the fact that counsel for respondent seem to ask us, if we reverse the case to remand it, in order that they can introduce proof to establish an agency and to show that the contract in evidence between Diesing and the Market House Association and Newsome was a mere subterfuge. If the plaintiff, repondent here, can make that showing, or can show by competent evidence that after this contract was made it was agreed that Newsome was in fact doing the work under contract with the Market House Association, which obligated him to do it, we think that he is entitled to do it.

It is claimed that there are non-lienable items in that account, it being cliamed that the charges for superintendent and foreman are not lienable items.

It is true that at an early day, in Blakey v. Blakey, 27 Mo. 39, our Supreme Court said (l. c. 40):

"The law gives the mechanic, builder, artisan, workman, laborer, or other person, who may do or perform any work upon or furnish materials for any building, a lien on the same to secure the payment of the work done or materials furnished; but it has no such elastic power as is claimed for it in this case ,and it cannot be stretched to cover, besides the value of the work done and materials furnished, a claim for services performed by the builder for himself in superintending his own workmen."

In O'Connor v. Current R. Co., 111 Mo. 185, 20 S. W. 16, our Supreme Court, at page 194, in an action to enforce a lien by contractors for the construction of a railroad under the law governing such liens, cited Blakey v. Blakey, supra, with approval, but on the point that non-lienable work was so mingled with that which was lienable as not to be separately distinguished. Our court in Nelson v. Withrow, 14 Mo. App. 270, l. c. 279, cited Blakey v. Blakey, supra, approvingly, but in that case as well as in the Nelson Case the claim for superintendence was by the contractor himself for his own work in superintending.

In Sweem v. Atchison, T. & S. F. Ry. Co., 85 Mo. App. 87, also an action under the lien law relating to the construction of railroads, Judge ELLISON, speaking for the Kansas City Court of Appeals, reviewing Blakey v. Blakey, supra, and other cases, says (l. c. 94) that the court felt it was left free, under the builders lien statute and the railroad lien statute, to consider as an original proposition, whether the claimant, who was a mechanic or machinist, superintending the work, is entitled to a lien for his services. Holding the two statutes to be not entirely alike, that learned judge concludes that under the railroad lien law the claim of this mechanic was lienable and he intimates grave doubt as to the correctness of the Blakey decision on principle.

In the case at bar the evidence is that the superintending work was done by a person employed by the contractor. That distinguishes this case from those referred to. It is further to be borne in mind that when Blakey v. Blakey was decided, the rule in our State was, to construe the mechanc's lien law strictly on the utenable ground that that law was in derogation of common law. But all of our modern decisions have taken exactly the opposite view and hold that it is to be construed liberally. See Joplin Sash and Door Works v. Shade, 137 Mo. App. 20, l. c. 23, 118 S. W. 1196; Powers & Boyd Cornice and Roofing Co. v. Muir, 146 Mo. App. 36, l. c. 49, 123 S. W. 490, and authorities cited in these two cases.

A very able review of the Missouri decisions, most of which we have cited above, as well as others, will be found in Continental & Commercial Trust & Savings Bank et al. v. North Platte Valley Irr. Co. et al., 219 Fed. 438, 1. c. 442. Reviewing these decisions the learned judge, referring particularly to Blakey v. Blakey, supra, says: "An examination of that case, however, shows that all that was decided was that where a builder took a contract for the erection of a house, he could not maintain a lien for superintending his own workmen." He also refers to Edgar v. Salisbury, 17 Mo. 271, as merely holding that where lienable and non-lienable charges were stated together in one charge, so that it was impossible to ascertain how much was lienable, the entire lien would be lost. (Such was the case in O'Connor v. Current River R. R. Co. supra.) Citing Murphy v. Murphy, 22 Mo. App. 18, as disposing of the point in the same way, and Nelson v. Withrow, supra, as following Blakey v. Blakey, supra, Judge CARLAND, who wrote the opinion in the Circuit court of the United States for this circuit in the case cited, says: "The old doctrine that these lien statutes, being in contravention of the common law, must be strictly construed, has given way to a more liberal doctrine, in modern times, for the purpose of carrying out the purposes of the statute." His conclusion is that the charge for superintending, under circumstances such as here, was lienable. The finding in this case was on the second count, which proceeded on contract. That fact, however, does not change the law, which only gives a lien for certain work, material and services. If under contract to do the work for a lump sum, non-lienable items are included, the fact of it being done under contract does not change the situation. Where the plaintiff endeavors to establish a lien against the realty he can charge the realty alone only for such work, labor or material as are lienable, and this is true whether the action is on *quantum meruit* or under contract.

Our conclusion is that the item for superintendence as well as that for the foremen are lienable items and

that the spirit of the more recent decisions of our State tends to support this view.

It is urged that the services and labor performed in excavation, no building or other improvement being placed upon the realty, are not lienable; that as no building was constructed, no improvements made, no lien can be maintained for excavation for the cellar and foundation. We do not accede to this.

In 27 Cyc., p. 36, par. 6. It is said:

"Excavations and foundations for a building are generally held to be within the lien laws, even though the building is not completed."

And in this same work, at p. 41, par. 16, it is said:

"The right to a lien for work done in the construction of a building is not dependent upon whether the building is actually completed but whether the construction is commenced. If this is done and lienable work is done in aid thereof the right of lien thereby becomes perfect, and cannot thereafter be defeated by any act of the proprietor."

While we have no authority in this state on that subject, the authorities cited in the compilation as above from other states fully sustain them. We hold that such work, being done in the excavation of this foundation, is lienable, although the project was afterwards abandoned and no superstructure erected.

The result is that the judgment against the defendand Newsome is affirmed, but the judgment against the defendant Merchants & Consumers Market House Association is reversed and the cause remanded as to that defendant. *Allen* and *Becker, JJ.,* concur.