**PAUL A. MEDLEY, INC.,
Plaintiff-Respondent,**

v.

**MONEY TOWN, INC., and Otie S. Petry, Defendant-Appellant.**

**No. KCD 29823.**

Missouri Court of Appeals,
Western District.

April 2, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 1979.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

The litigation spawning this appeal was a suit by a contractor, Medley, against a tenant, Money Town, who had contracted for remodeling of the leased premises, and against the owner, Petry, for imposition of a mechanic's lien for the work and labor. The appeal is by the owner, Petry, attacking the trial court judgment imposing the lien.

The single and dispositive issue is the existence of any agency relationship between the tenant, Money Town, and the owner, Petry.

Defendant-Appellant Petry is the owner of a one-story commercial building located in Columbia, Missouri. Prior to the instant dispute, one end of the building was partitioned off as office space; the rest of the building was suitable for warehouse or storage space. Petry had engaged a realtor to find a tenant. In August of 1975, the realtor was contacted by Grothaus, representing Money Town, a company with a state contract to vend government food stamps. Lease negotiations began and concluded with the signing of a three-year lease which required Money Town to pay $300 per month in rentals. The critical portion of the lease to this dispute was Paragraph Three which reads, in pertinent part, as follows:

"3. The parties hereto agree that the business intended to be carried on by the Lessee herein is that of a vendor of food stamps and associated and related activities; and in connection with its business it is necessary that certain modifications and remodeling work be performed in and about the building which is located on the property as herein described. The Lessee has asked and the Lessor herewith grants the privilege to Lessee during the first thirty (30) days of said lease to make certain alterations in the interior of the building, all of which Lessee represents will not affect the building structurally.

J. Robert Tull, Mallory V. Mayse, Columbia, for defendant-appellant.

Scott O. Wright, Columbia, Brown, Wright, Willbrand & Simon, Columbia, for plaintiff-respondent.

Said changes shall consist of moving a partition wall, constructing two additional walls, installing a ceiling on the east side of the building and installing a burglar alarm and security system, all of which with the exception of the burglar alarm shall become fixtures at the time of installation and be the property of Lessor. Said alterations shall be made in accordance with the plan therefor attached hereto, marked "Exhibit A" and made a part hereof by reference . . ."

The plans mentioned in the lease were not attached at the time of the execution of the lease and were not introduced into evidence. Petry testified that she never saw the plans for the alterations. Grothaus testified that he received a set of plans about a week after he took the lease to St. Louis for the execution by the president of Money Town.

During the time of the lease negotiations, Grothaus was also negotiating with plaintiff's company, represented by LeMone, superintendent and vice-president. These negotiations concerned the alterations to Petry's building. An estimate of $10,014.20 was given to Grothaus; Petry was not present at any of the meetings.

Because Money Town requested a completion of the alterations by October 1, LeMone applied for and received a building permit on September 12, ten days before the formal lease was actually concluded. Work began on September 15. LeMone testified that from his conversations with Grothaus, he believed that everything was "okay" with the owner.

In the next three weeks, extensive alterations of the building were completed, including the installation of carpeting, paneling, a new ceiling with overhead fluorescent lighting, a bulletproof teller's cage, a burglar alarm and electronic security system. With the exception of the burglar alarm, security system, and part of the ceiling, none of the alterations were specified in the lease agreement.

Petry did not enter the building, according to her own testimony and that of Gro-thaus, LeMone, and the realtor until the alterations were substantially complete. Petry testified that on entering the building, she was "shocked" and "amazed" to see the extensive alterations. According to Petry, she had no knowledge of and had not consented to the carpeting, paneling, electrical work, or the bulletproof glass and steel door. At the time of her entry, she objected to the alterations to the workmen at the site, but could not remember whether she objected to other persons.

Soon after the alterations were complete, Money Town defaulted on the rent payments and abandoned the premises. Plaintiff Medley's billings to Money Town for the alterations were also not paid. Thereafter, plaintiff filed this suit against Money Town and Mrs. Petry. The building remained vacant until June of 1976, when it was rented to a magazine distribution company for $400 per month. The carpeting installed by Money Town had to be removed, and the paneling protected; other alterations were also necessary before the new tenant could use the building.

Plaintiff Medley's action is based on § 429.010 RSMo Supp.1975, which in relevant part says:

"Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, . . . for any building, erection or improvements upon land, . . ., under or by virtue of any contract with the owner or proprietor thereof, or his agent, . . . shall have for his work or labor done, or materials, fixtures, . . ., a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of three acres; . . ., to secure the payment of such work or labor done, or materials, fixtures, . . . furnished as aforesaid; . . ."

Thus, to impose the lien, Medley must establish either a contract with "the owner or proprietor thereof, or his agent . . . ." There is no evidence of a contract between Medley and the owner, Petry, for the alter-

ations to the property—the arrangement was between Money Town and Medley. Unless Money Town was the agent of Petry, either expressly or by implication, the lien cannot be imposed.

The principles used to determine the existence of an agency in a mechanic's lien situation have long been established in Missouri law. Since the statutory basis for mechanic's liens has changed very little, the early cases are both definitive and illustrative. *See* Brasher, "History of Mechanics' Lien Statutes," 22 V.A.M.S., pp. 267–76.

■ The fundamental principle is that the "mere relation[ship] of landlord and tenant does not in itself create an agency in the tenant within the meaning of the statutes covering mechanic's liens." *Sol Abrahams & Son Const. Co. v. Osterholm*, 136 S.W.2d 86, 92 (Mo.App.1940); *Ward v. Nolde*, 259 Mo. 285, 168 S.W. 596, 600 (1914); *McGuinn v. Federated Mines and Milling Co.*, 160 Mo.App. 28, 141 S.W. 467, 468 (1911).

■ A corollary principle is that the mere fact that the landlord or lessor consented to the lessee's making of alterations for the *lessee's* convenience does not create an agency for purposes of the lien. *Ward v. Nolde, supra* at 601; *Curtin-Clark Hardware Co. v. Churchill*, 126 Mo.App. 462, 104 S.W. 476, 477 (1907); *Winslow Bros. Co. v. McCully Stone Mason Co.*, 169 Mo. 236, 69 S.W. 304, 305 (1902).

■ For an agency to exist that would allow the tenant to encumber the interest of the landlord in the property, a right "must spring from [the] contract, express or implied, between the tenant and landlord." *Powell v. Reidinger*, 234 S.W. 850, 852 (Mo. App.1921). There must be some intent on the part of the landlord at the time of the signing of the lease to *bind* or *obligate* the tenant to make alterations which will amount to a permanent and substantial benefit to the leasehold. *Ward v. Nolde, supra* at 600. *See also Powell v. Reidinger, supra*; *Philip Carey Co. v. Kellerman Contr. Co.*, 185 Mo.App. 346, 170 S.W. 449, 451–52 (1914); *Curtin-Clark Hardware v. Churchill, supra.*

More recent cases have followed the principles enunciated in the early case law. *Utley v. Wear*, 333 S.W.2d 787 (Mo.App.1960), outlines the principles discussed above and applies those principles to find an implied agency in the facts of that case. *See also Newport v. Hedges*, 358 S.W.2d 441 (Mo. App.1962). The law generally is in accord with the Missouri authority and is collected in 79 A.L.R. 962 and 163 A.L.R. 992.

■ Applying these principles to the facts of the instant case, the language of the lease agreement is of prime importance. Paragraph three as set out in the facts includes the following telling phrases:

"The Lessee *has asked* and the Lessor herewith *grants the privilege* to Lessee during the first thirty (30) days of said lease to make certain alterations in the interior of the building, all of which Lessee represents will not affect the building structurally . . . ." (Emphasis added).

The alterations itemized in the lease were relatively minor in relation to the size of the building and would not have substantially altered the character of the building or its value to the lessor. The combined effect of the permissive language and the minor nature of the alterations specified in the lease demonstrate that the lessor's intent at the time of the signing of the lease was to do no more than to *consent* to minor alterations for the convenience of the tenant.

Medley argues from the language of the lease that the improvements were "necessary" and that they were therefore required by the lease. The authorities do not support the argument. Because improvements are necessary to the tenant does not make them required by the landlord as a condition of the lease. The whole thrust of the instant lease is one of permission for and not a requirement of alterations. In fact, Grothaus denied that the extensive improvements of carpeting and paneling were even "necessary." Medley's related argument, that the improvements were of such a permanent or substantial nature that the tenant was impliedly authorized to bind the landlord, is also not valid. First, the improvements actually made were far more

extravagant than the landlord would have envisioned from the statements in the lease, and there is no showing that the plans were ever seen by Petry. Beyond that, the undisputed testimony of Mrs. Petry was that changes had to be made before the building could be leased after Money Town's default, and that some of the alterations installed for Money Town had to be removed or changed before the new tenant could use the building.

The judgment imposing the lien arising from a court-tried case is reviewed by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The failure of the trial court to enter findings of fact and conclusions of law, even though requested by counsel has not aided the review in the light of *Murphy*. Assuming the most favorable review of the facts and the reasonable inferences from those facts as contended by Medley, the judgment must be reversed as a misapplication of the law. No agency relationship existed between Money Town and Petry to justify the imposition of a lien upon the Petry property. The case is reversed and remanded with directions to enter a judgment against the plaintiff Medley and in favor of the defendant Petry on the mechanic's lien issue.

All concur.